## THE STATE OF IOWA;

DES MOINES, JUNE TERM, A. D. 1859.

In the fourteenth year of the State.

PRESENT:

HON. GEORGE G. WRIGHT, CHIEF JUSTICE.
   "   WM. G WOODWARD,   } JUSTICES.
   "   L. G. STOCKTON,       }

## PELAMOURGES v. CLARK, et al.[1]

1. EVIDENCE: FACTS: OPINION. The general rule of evidence is, that the testimony of witnesses must be confined to facts, and that opinions are not admissible.

2. SAME: EXPERTS. Upon the trial of issues involving questions of art, science, skill, trade; or of other matters so far partaking of the nature of a science or art as to require a course of study or habit, in order to attain a knowledge of them, the opinions of persons called experts, instructed therein, are admissible in evidence.

3. SAME: INSANITY. In the trial of an issue upon the sanity of a testator, the opinion of a non-professional witness, not a subscribing witness to the will, is inadmissible when unaccompanied by the facts and circumstances upon which such opinion is based.

4. OPINION: MERITS. A witness cannot be permitted to give his opinion in answer to an interrogatory which embraces the whole merits of the case in controversy and leaves nothing for the jury to determine.

1 This case should have appeared in 8 Iowa, but was overlooked by the Reporter.

Pelamourges v. Clark, et al.

5. WHEN OPINIONS MAY BE ADMITTED. The judgment or opinion of a witness may be admitted in evidence, on a matter material to be considered by the jury, when based upon facts and circumstances, which from their nature and number, it would be impossible to bring before it.

6. SAME. Testimony showing the feeling manifested by a testator towards his brother presents facts rather than opinions, and may be admitted in evidence to show his insanity.

7. IMMATERIAL EVIDENCE. A judgment will not be reversed because of the erroneous ruling of the District Court in either admitting or refusing to admit evidence when it appears that such evidence was immaterial.

8. LEADING QUESTION. A question is leading when it suggests the answer to it. A question which merely directs the attention of the witness to the subject with reference to which he is interrogated, is not leading.

9. DEPOSITIONS: COUNTY COURT. A commission to take a deposition to be used in the trial of a cause in the County Court, may be issued in the name of the District Court, by the clerk, and under the seal thereof. Code sec. 2455 and 2465.

10. SAME. When a deposition is taken upon interrogatories propounded by both parties, and is returned and filed in the clerk's office, neither party has a right to withdraw it, and either may use it in evidence.

11. SAME. A deposition taken to be used in the trial of a cause in the County Court, and duly returned, opened and filed, may be used in the trial of the same cause in the District Court, on appeal. That it was not submitted in evidence on the trial in the court below, is no objection to its being used in the District Court.

12. EVIDENCE: PREJUDICE. The judgment of the court below will not be reversed because of error in refusing to suppress an objectionable interrogatory addressed to a witness, when it appears that the objecting party was not prejudiced by the answer.

13. DEPOSITION: CHANGE OF FORM IN INTERROGATORY. The District Court has no power to change the form of an interrogatory in a deposition, after it has beeen answered by the witness.

14. SAME. When on the trial the plaintiff offered the depositions of the defendants, or caveators, taken in another suit, to prove that they had no interest in a mill bequeathed by a will in controversy, but did not undertake to show that they had no other interest in the testator's estate, or that the mill mentioned in the deposition was all of the estate of which he died possessed; Held, that the Court did not err in refusing to admit the deposition.

15. NEW TRIAL. The Supreme Court will not interfere with the discretion exercised by the court below, in overruling a motion to set aside a verdict of insanity, on the ground that it was contrary to the evidence, when the evidence discloses a monomania in the testator, before, about and after the time the will in controversy was executed, which man-

ifested itself in an unnatural opposition to, and dislike of his relatives.

16. SAME: NEWLY DISCOVERED EVIDENCE. A new trial will not be granted on the ground of newly discovered evidence, when such evidence tends only to contradict, or impeach, the evidence of a witness who testified on the trial.

17. SAME: DILIGENCE. A motion for a new trial on the ground of newly discovered evidence, must show either that the party making the application exercised due diligence to discover it before trial, or that such diligence would have been unavailing.

18. SAME: NO PREJUDICE. A new trial will not be granted, nor the judgment of the District Court reversed, for the improper rejection of testimony when the court is satisfied that justice has been done, and when there is little reason to believe that a different result would ensue upon a new trial. WRIGHT, C. J. dissenting.

19. INSANITY. When on the trial of an issue as to the sanity of a testator, the Court was asked to instruct the jury that "a man may lawfully dispose of his property by will, if he be not a lunatic; and if the jury believe from the testimony that the testator was not totally deprived of reason at the time he made the will in question, then they should find" that he was sane; *Held*, that the instruction was properly refused.

20. SAME. When on the trial of the same issue the plaintiff asked the court to instruct the jury that "monomania, or partial insanity, will not avoid a will, unless it is shown that the will was the direct offspring of such partial insanity, and the act of making the will must be traced to such morbid delusion and shown to be the result of it;" *Held*, that the instruction was properly refused.

21. SAME. When on the trial of the same issue, it appeared in evidence that the testator had acquired an aversion to his brother, and the Court was asked to instruct the jury that "if the proof shows that the testator had such aversion, and also that the brother was a wealthy man, this may satisfactorily account for the fact that he was not mentioned in the will;" *Held*, that the court did not err in refusing the instruction.

22. SAME: When on the trial of the same issue the court was asked to instruct the jury, that if they believed that the testator during the last five months of his residence in Davenport, was courteous, cleanly in appearance and prompt in his dealings, and that no change was noticeable in him, they may "consider him of sufficiently sound mind to make a will;" *Held*, that the instruction was properly refused.

23. INSTRUCTIONS. It is not error to refuse instructions which are correct and proper if they have already been given in substance.

24. SAME. Instructions in the form of mere abstract propositions, which are either irrelevant to the issue, or bear remotely thereon, may be refused when such refusal will work no prejudice to the party asking them.

Pelamourges v. Clark, et al.

*Appeal from Scott District Court.*

FRIDAY, APRIL 22.

PROBATE OF A WILL. On the 20th day of November, 1850, James McCarthy made a will, by which, after giving and bequeathing to Ann Clark, Rebecca Gibson, and Sarah Conlain, (his sisters,) each the sum of one hundred dollars, he made the following disposition of his real estate: "I give and bequeath, and by these presents do give and bequeath to the Right Reverend Catholic Bishop of Dubuque, State of Iowa, and to his successors forever, all the real estate that now belongs to me, or am possessed of, (after deducting from the same the aforesaid legacies to my three sisters,) consisted of a saw mill and fixtures, together with a lot of land upon which it stands, and just adjoining the lower part of said city of Davenport, and which I purchased from Enos Tichnor; for the purpose of establishing a school or schools, to be under the management of the Religious Order of Christian Brothers; and in no case to be appropriated in any other manner." After making further bequests of books, engravings, etc., the will named "the Right Reverend Catholic Bishop of Dubuque, the Reverend Father Pelamourges, of Davenport," and his "brother, William McCarthy, of Providence, Rhode Island," executors thereof.

The will was brought into the County Court of Scott County, Iowa, at the January Term, 1856, by the executor, Pelamourges, and read. Ann Clark and Rebecca Gibson, sisters of the testator, appeared by counsel, and filed their caveat, "protesting against, and resisting the probate of said will;" alleging, as reason therefor, that it was not published and declared by the testator "as and for his last will and testament;" that "on the 20th day of November, A. D. 1850, and for a long time before and after that period, the said James McCarthy was not of sound mind, and was not at that period capable in law to make a disposition of his property;" and that the said "James McCarthy being so insane,

Pelamourges v. Clark, et al.

and not capable of judging of the legal effect of his acts, was importuned to sign said will by interested parties, for the purpose of defrauding the rightful heirs of said James, and transferring the property of said James to the hands of strangers, contrary to the oft repeated intention of said James, at a time when he was of a sound disposing mind." Upon these allegations issue was joined, and the court, "after hearing testimony and argument of counsel," considered and ordered that said will "be not allowed or admitted a probate, and that the same be held for naught, and be considered void and of no effect."

The cause was brought to the District Court of Scott County, by appeal. On the trial, at the June Term, 1858, the jury were directed to "answer the following questions by yes or no: 1st—Was James McCarthy, on the 20th day of November, 1850, of sound mind? 2nd—Did James McCarthy, on the 20th day of November, 1850, execute the will in controversy in, the presence of the witnesses whose names are thereunto subscribed? 3rd—Was James McCarthy, on the 20th day of November, 1850, twenty-one years of age? 4th—Did James McCarthy die in 1853?" To the first of these interrogatories, the jury, by their verdict, answered, "No;" and to the last three they answered, "Yes." The court "ordered and adjudged, that said will is not the will of James McCarthy in his sound mind," and refused to admit the same to probate, and affirmed the judgment of the County Court. Exceptions were taken to the admission and rejection of evidence, and to the giving and refusing of instructions on the trial. The errors assigned are presented in the opinion of the court. The plaintiff Pelamourges, the executor named in the will, appeals.

*George S. C. Dow* and *C. E. Putnam*, for the appellants.

I. In excluding the deposition of A. F. Brown, the court decided that unprofessional witnesses in this case can state facts and circumstances only—that such witnesses can not

Pelamourges v. Clark, et al.

give their *opinions.*   In this the court erred.   After the witness has first stated the facts and circumstances upon which his opinion is founded, it is competent for him to give his opinion as to the *sanity* or insanity of the testator.   *Clark* v. *The State,* 12 Ohio 483;  *Grant* v. *Thompson,* 4 Conn. 209; *Rambler* v. *Tryon,* 7 S. & R. 90;  *Wagan* v. *Small,* 11 Ib. 141; *Morse* v. *Crawford,* 7 Verm. 499;  *Lester* v. *Pittford,* 7 Ib. 158; *Gibson* v. *Gibson,* 9 Yerg. 329;  *Potts* v. *House,* 6 Georgia 324, 337;  *Culver* v. *Haslam,* 7 Barb. 314, 322;  *Baldwin* v. *The State,* 12 Mo. 223;  *De Witt* v. *Barly,* 13 Barb. 550; *Kinnie* v. *Kinnie,* 9 Conn. 112;  *Norris* v. *The State,* 16 Ala. 776; *Florey* v. *Florey,* 24 Ala. 241; *Powell* v. *The State,* 25 Ib. 27;  *Cleary* v. *Cleary,* 2 Iredell 78;  *Dickens* v. *Johnson,* 7 John. 484;  *The State* v. *Bringea,* 5 Ala. 241;  *Doe & Sutton* v. *Reagon,* 5 Black. 217;  *Egleton & Coventry* v. *Kingston,* 8 Ves. 449;  *Walker* v. *Walker,* 14 Georgia 242;  *Berry* v. *The State,* 10 Ib. 511 and cases there cited; *Merser* v. *Kelso,* 4 Grat. 188; *Murray* v. *Bethune,* 1 Wend. 196;  3 Stark. Ev. 1707 and note; 2 Pick. 303;  *Griffin* v. *Griffin,* Charleton 218; 4 Mass. 593;  5 Barr. 443; *Townsend* v. *Townsend,* 7 Gill. 10; *Gibson* v. *Williams,* 4 Wend. 320; *Duffield* v. *Morris,* 2 Har. (Del.) 385; *Porter* v. *Pequon Man. Co.,* 17 Conn. 257; *Harrison* v. *Rawen,* 3 Washington C. C. 580;  *Crawford* v. *Andrews,* 6 Georgia 244; *Bailey* v. *Poole,* 13 Iredell 404; *McKee* v. *Nelson,* 4 Conn. 355; 2 Green, Ch. 563.

II. The court below erred in refusing to allow the plaintiff to read in evidence the deposition of Matthewson.   It was taken by the caveators, and either party was entitled to read it on the trial of the cause.   *Nash* v. *The State,* 2 G. Greene 298; *Green* v. *Chickering,* 10 Mo. 109; *Yeaton* v. *Fry,* 5 Cranch 335;  *Calhoun* v. *Hayes,* 8 Watts & S. 127; 4 U. S. Dig. 669 (section 224;) 8 Ib. 163 (section 113;) 2 Ib. 218, (section 258; ) *Crick* v. *McClintic,* 4 G. Greene 290; Code of 1851, section 2464.

III. The court below erred in refusing to allow plaintiff to read in evidence the depositions (being the declarations in

Pelamourges v. Clark, et al.

writing) of Ann Clark and Rebecca Gibson, the caveators, or defendants, in this action.

IV. The appellants presented the following propositions in the argument of the assignment of errors alleged in the instructions given to the jury:

1. Every man is presumed to be of sane mind until the contrary is proven.   The burden of proving unsoundness or imbecility of mind in the testator, is upon the party seeking to impeach the validity of the will for that cause.   1 Jarm. on Wills, 74 and cases cited in notes 2 and 3; *Grabill* v. *Barr*, 5 Barr 441; 12 U. S. Dig. 597; *Trumbull* v. *Gibbins*, 2 New Jer. 117; *Sloan* v. *Maxwell*, 2 Green Ch. R. 567; *Burton* v. *Scott*, 3 Randolph 401; *Phelps* v. *Hartwell*, 1 Mass. R. 71; *Dickinson* v. *Barber*, 9 Mass. 218; *Needam* v. *Iden*, 25 Pick. 510; *Brook* v. *Barrett*, 2 Pick. 24; *Kinnie* v. *Kinnie*, 9 Conn. 101; *Pettes* v. *Bingham*, 10 N. H. 514; *Gass* v. *Gass*, 3 Humph. 279; *Jackson* v. *Van Dusen*, 5 John. 159; *Stewart* v. *Lispinard*, 26 Wend. 297; *Jackson* v. *King*, 4 Cowen 216, 219; *Odell* v. *Burch*, 21 Wend. 143; *Daffridd* v. *Morris*, 2 Harr.; *Andrus* v. *Weller*, 2 Green (New Jer.) 604, 3 Atkinson 361; *White* v. *Wilson*, 13 Ves. 88.

2. A lunatic having *lucid intervals*, may make a *will* during said intervals, but where general insanity is established, the burden of proving that a will was made during such interval, rests upon those seeking to establish the will, and it is only necessary to show a lucid interval of sufficient length to execute said will.   1 Jarm. on Wills, 67 and cases cited in notes; 3 Stark. on Ev. 1711 note "F.;" *Cartwright* v. *Cartwright*, 1 Phill. R. 90; 5 U. S. Dig. 956 section 30, *Hardin* v. *Hays*, 9 Barr, 151; 9 U. S. Dig. 432; 1 Williams on Ex. 19 and notes.

3. To defeat a will on account of *partial insanity*, it must be shown that the will was the *direct offspring* of such insanity—the *act* must be traced to such *morbid delusion*, and shown to be the result thereof.   1 Jarm. on Wills; 59–61–64, and cases cited in notes; 1 Williams on Ex. 25 and

cases cited; *Tullech* v. *Allinson*, 3 Hagg. 527; *Dew* v. *Clark*, 2 Eng. Ecc. Rep. 486, 438. Though he be irrational upon all other subjects, if not about his property, he can make a will. *James* v. *Langdon*, 7 B. Monroe 197; *Hamblet* v. *Hamblet*, 6 N. H. 333; *Breed* v. *Pratt*, 18 Pick. 117; *Hiches* v. *Whittemore*, 4 Met. 645; *Stevens* v. *Van Clern*, 4 Wash. C. C. 268; 8 Shepley 463.

4. It is the prolonged departure, without any adequate external cause from the state of feeling and modes of thinking usual to the individual when in health, that is the true feature of disorder of mind; and in judging of a man's sanity, it is consequently essential to know what his habitual manifestations were, as well as what his present symptoms are. *Delusion* is the true test of *insanity*. 7 English Ecc. R. 530; *Mudway* v. *Croft*, 7 Eng. Ecc. R. 547; *Greenwood* v. *Greenwood*, 7 Eng. Ecc. R. 433; *Wheeler & Botesford* v. *Anderson*, 5 Eng. Ecc. R. 211; *Rodd* v. *Lewis*, 6 Eng. Ecc. 83; *Boyd* v. *Ely*, 8 Watts 66. Nervousness of temperament and eccentricity of manner and habits are consistent with a sound, disposing mind and memory in a testator. *Stanton* v. *Wetherwar*, 16 Barb. 259; *Trumbell* v. *Gibbons*, 2 New Jer. 117; *Ben. Mercer* v. *Kelso*, 4 Gratt. 106; *Potts* v. *House*, 6 Geo. 324; *Tompkins* v. *Tompkins*, 1 Bailey 92; *Lee* v. *Lee*, 4 McCord 183; *Howard* v. *Coke*, 7 B. Mon. 655; 8 U. S. Dig. 371; *Rodd* v. *Lewis*, 6 Eng. Ecc. R. 83; *White* v. *Driver*, 1 Eng. Ecc. Rep. 44; *Cartwright* v. *Cartwright*, 1 Eng. Ecc. Rep. 47; *Chambers & Yateman* v. *Queen's Proctor*, 7 Eng. Ecc. R. 151; 1 Williams on Ex., 17 to 32. "It is only the belief of facts which no rational person would have believed that is *insane delusion*." 1 Williams on Ex., 30; *Cartwright* v. *Cartwright*, above cited; Wharton & Stille's Med. Jur. 13, 14, section 8.

5. The circumstance that the will was wholly written by the testator himself, is *prima facie* evidence that he was in his senses and able to make a will at the time of writing it, so that the *onus probandi* to repel the presumption, lies on those who would impugn it. 3 Stark. on Ev. 1711; *Tem-*

HARVARD
LAW SCHOOL
LIBRARY

*ple* v. *Temple,* 1 H. & M. 476; Harper's Will, 4 Bibb, 244; 1 Williams on Ex., 17 note 1; 5 Johns. 144; 1 Pet. C. C. R. 163; *Couch* v. *Couch,* 7 Ala. 519; 26 Wend. 311, 313, 317; *Thompson* v. *Quimley,* 3 Brad. 500; Ray on Insanity, section 303, section 12.; *Griffin* v. *Griffin,* Charlton 227; *Watson* v. *Watson,* 2 B. Mon. 74..

6. Those impeaching a will on the ground of insanity in the testator, must show that he was insane *at the time* of making the will, and for this purpose, proof of insanity both before and after the will, is admissible, and such proof will throw the *onus* of proving sanity at the date of the the will, on those who support it. *Ford* v. *Ford,* 7 Humph. 92; 1 Williams on Ex. 19 note "F."; *Grabill* v. *Barr,* 5 Barr 441; *Pettes* v. *Bingham,* 10 N. Hamp. 514; *Wright* v. *Lewis,* 5 Rich 212; *Terry* v. *Buffington,* 11 Geo. 337; *Hathren* v. *King,* 8 Mass. 371.

7. It is not necessary to the validity of the will, that the testator should have a perfectly sound mind. It is only necessary that he should have sufficient capacity to transact ordinary business. *Howard* v. *Coke,* 7 B. Mon. 655.; *James* v. *Langdon,* 7 B. Mon. 193; 8 U. S. Dig. 371; *Tomkins* v. *Tomkins,* 1 Baily 92; *Kinnie* v. *Kinnie,* 9 Conn. 102.; *Johnson* v. *Moore,* 1 Littell, 371, 375; *Blanchard* v. *Nutter,* 3 Denio 37, note; *Thompson* v. *Quimley,* 3 Brad. 490.

8. It is not necessary that a testator, in order to be competent to make a will, should have that strength of mind that would be necessary to enable him to traffic with, and mortgage his property. *Howard* vs. *Coke,* 7 B. Monroe 958.

9. If the will be properly proved, it is the duty of the surrogate to admit it to probate without enquiring as to its effect or construction. *Van Wert* v. *Benedict,* 1 Brad. R. 115.

V. The court erred in refusing to set aside the verdict, and in overruling the motion for a new trial. *Cook* v. *U. S.,* 1 G. Greene 58; *James* v. *Langdon,* 7 B. Mon. 197; *Jordan* v. *Reed,* 1 Iowa 138; 4 G. Green 245, 251; *Wheeler* v. *Shields,* 2 Scam. 351; *Manier* v. *Miers,* 4 B. Mon. 514; 3

John. 532 ; 3 East 455 ; 8 Ib. 352 ; *Smith* v. *Carr*, 16 Conn. 450 ; *Field* v. *Deatley*, 10 B. Mon. 4 ; Graham on New Trials, 262–4 ; *Boyden* v. *Moore*, 5 Mass. 365 ; *Dubley* v. *Sumner*, Ib. 438 ; *Wardell* v. *Hughes*, 3 Wend. 418 ; *Noyes* v. *Sheppard*, 30 Maine 173 ; *Scott* v. *Lunt*, 7 Pet. 569 ; *Watts* v. *Howard*, 7 Met. 478 ; *Warren* v. *The State*, 1 G. Greene 106 ; *Van Alst* v. *Hunter*, 5 John. Ch. R. 148 ; *Breed* v. *Pratt*, 18 Pick. 117 ; Ray on Insanity, sections 9, 42, and 296.

*Grant* and *Lindley*, for the appellees.

I. The opinion of a non-professional witness, who is not a subscriber to the will, as to the sanity of the testator, is not admissible. *Dewitt* v. *Barly*, 5 Seld. 371, cited as the most recent and the ablest American opinion on this subject. Best Ev. 587, 597.

II. This rule has its exceptions, as in questions of science, skill, trade, persons of skill called *experts* are permitted to give their opinion. *Dewitt* v. *Barly*, 5 Seld. 371 ; —— v. *Wilson*, 1 Gray 339.

III. The court did not err in refusing to allow the plaintiff to read the deposition of Matthewson in evidence.

1. Because it was never filed and offered in evidence by the caveators by whom it was taken. *Dana* v. *Underwood*, 19 Pick. 104 ; *Sexton* v. *Brock*, 15 Ark. 345.

2. It proved nothing and was not material.

IV. The affidavit showing cause for a new trial was insufficient :

1. It showed no diligence whatever to procure the newly discovered evidence before the trial. Graham on New Trials, 473, 475, 478, and the cases there cited ; 14 Ill. 139 ; 3 Scam. 486.

2. Because a new trial will not be granted when the newly discovered evidence is only intended to impeach witnesses on the other side. Graham on New Trials, 485 489, 496, and the authorities there cited ; 4 Scam. 456 ; *Gardner* v. *Gardner*, 2 Gray 434 ; 13 Geo. 314 ; 8 Graham 637 ; *Millard* v. *Singer*, 2 G. Greene 147 ; *Mays* v. *Deaver*, 1 Iowa 225 ; *Warren* v. *The State*, 1 G. Greene 106.

V. The burden of proving the insanity of the testator is with the caveators, but once proved, the burden of proving sanity is changed. Sanity can then be proved only by evidence as strong and demonstrative as that required to establish insanity. Best's Ev. 473; 11 Vesey 11, *ex parte Holyland*; *Hale* v. *Warren*, 9 Vesey 611.

VI. Antipathy, dislike, and hatred of one's relatives, which was not prejudice, but which was delusion, the result of a heated imagination, which neither argument nor evidence could remove, would render the will void. *Dew* v. *Clark*, 1 Adams 271; 2 Ib. 102; 3 Ib. 79; Ray's Med. Jur. section 235; 5 Russell 163; *Johnson* v. *Morris' heirs*, 1 Littell R. 371; Shel. Lun. 274, 292; 1 Phill. E. R. 119; 1 Jarm. on Wills 71.

STOCKTON, J.[1]  We shall examine the questions raised in this case in the order in which they are presented by the assignment of errors.

I. The first assignment of error is upon the ruling of the court in suppressing a portion of the deposition of Alfred F. Brown. The fourth and fifth interrogatories, and the answers; and the fourth cross interrogatory, and the answer thereto, are as follows:

"*Intg.* 4.   What was James McCarthy's state of mind as regards sanity during your acquaintance with him? What was his state of mind on or about the 20th Nov., 1850? State particularly all the facts tending to show his state of mind at that time."

"*Ans.*   At no time during my acquaintance with him did I have any doubt but that he was sane. I cannot state that I saw him as late as Nov. 20th, 1850; but late in the fall of 1850 I had frequent conversations with him, and in such conversations I neither saw nor heard anything from him to induce me to doubt his entire sanity.

"*Intg.* 5.   What was his state of mind as regards his

[1]. WRIGHT, C. J dissenting.

capacity to make a disposition of his property by will, on or about Nov. 20th, 1850?"

"*Ans.* From my acquaintance with him I should think him capable of making a disposition of his property by will at any time during my acquaintance with him."

"*Cross Intg.* 4. Suppose the fact to be that he was insane before he came to Davenport, and after he left Davenport, state what conduct of his you remember which tends to show aberration of mind."

"*Ans.* I can recollect of no circumstances which tend to show aberration of mind during my acquaintance with him."

The court ruled that the answers of the witness to these interrogatories must be suppressed, and they were excluded from the jury. The court further ruled, in the same connection, that the opinions of non-professional witnesses, not subscribers to the will, could not be given in evidence, but that such witnesses must state facts and circumstances only, and let the jury judge of the testator's sanity for themselves.

The general rule is admitted to be, that the testimony of witnesses is to be confined to facts, and that their opinions are not admissible. "This rule, (says Mr. Best) is necessary to prevent the other rules of evidence from being practically nullified. Vain would it be for the law to constitute the jury triers of disputed facts, to reject derivative evidence when original proof is withheld, or to declare that a party is not to be prejudiced by the words or acts of others with whom he is unconnected, if they might be swayed by *opinions* relative to those facts, expressed by persons who come before them in the character of witnesses." Best on the Principles of Evidence, sec. 344.

The exceptions to the rule are, that upon all questions of science or skill, trade, and others of a like kind, persons instructed in the particular art or science, called *experts*, may give their opinions; medical men may give their opinion as to the cause of disease or death; as to the consequences of wounds, and as to the sane or insane state of a

person's mind as collected from a number of circumstances; and as to other subjects of professional skill. 1 Greenl. Ev. sec. 440.

This species of testimony is admitted on the ground that the opinions of witnesses possessing peculiar skill, are admissible whenever the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science or art, as to require a course of previous habit or study in order to attain a knowledge of it. 1. Smith's Leading Cases, 286. Best on Evidence, sec. 346.

It was held by the court in this case, that the opinions of non-professional witnesses could not be allowed, as to the sanity of James McCarthy; and it is now argued for the defendants, in support of the ruling of the court, that such testimony is forbidden by the very nature of the rule above referred to; that such witnesses are not *experts*, and that the law presumes the jury to be as capable of drawing correct conclusions and inferences from facts, as those who have no peculiar sources of knowledge to guide them in forming their opinions, which are not presumed to be equally within the reach of the jury.

For the plaintiff, the executor named in the will, it is argued that this species of evidence is admissible on the ground that positive and direct evidence is wholly unattainable, and that a resort to opinions furnishes the only available means of arriving at the truth in such cases; that the difficulty of spreading the whole case before the jury by a detail of the acts and conversations of the party, when the question relates to his mental capacity, would render it impracticable in many cases to come to a satisfactory conclusion, without receiving, to some extent, the opinions of witnesses; and that such species of testimony forms a well defined exception to the rule which excludes the opinion of a witness.

In the case of *Dewitt* v. *Barly*, et al, 5, Selden 371, the ques-

tions to the witness were : "Whether, in the opinion of the witness, Dewitt, the grantor in the deed, was capable of managing his affairs and business ?" and "whether he had capacity to comprehend and transact business ?" The court held these questions inadmissible; and while admitting that, on subjects of science, skill and trade, the opinions of *experts* were allowed on the principle that the jury have not the same knowledge on these matters as such witnesses, and that they need to be enlightened by the opinions of those possessing knowledge in regard to them, they yet held the exception to the rule, excluding the opinions of witnesses, as distinguished from facts, was never extended to the admission of the opinions of laymen upon questions of mental capacity.

The same case was again before the Court of Appeals of New York, 3 Smith, 340, and the court, in part at least, overrule the former decision, while conceding at the same time that the questions to the witness, above set forth, were improper, upon the principle that opinions, when permissible to be given in evidence, must be confined to the facts alone, and must not embrace matters of law as well as facts. A distinction is held by the court to exist in the application of the rule in cases of mental imbecility arising from age or natural decay, and cases of hallucination, or partial derangment of the mental powers. In cases of idiocy or imbecility, they say, the opinion of the witness is denied from indications which are equally patent to all, and a man of sound judgment and experience in life can observe these indications and draw just inferences from them, as well without, as with a scientific education. In such cases, it is held by the court, the opinions of non-professional men may be given in evidence to show the state of mind of the party. While in cases of partial derangment, involving only a portion of the mental powers, or where it consists in some single hallucinated idea, it is conceded by the court that witnesses, whose opinions are received upon the ground that the facts and circumstances upon which an opinion is to be formed cannot be adequately

described in words, are never permitted to give their opinions upon a hypothetical case, nor upon a state of facts detailed by others ; that they can speak from personal observation only; and must state so far as they are able to do so, the reasons upon which their conclusions are founded. It is required that the jury shall be furnished with every practicable means of testing the accuracy of the opinion, and the witness must state, as far as he is able, the facts and reasons upon which he bases his conclusion.   3 Smith, 351.

The opinion of the court in the case cited contains the latest exposition of the rule of law, as claimed by the plaintiff.   Admitting the rule to be correct, as thus defined by the court, we think there was no error in the judgment of the District Court excluding the answers of the witness, Brown, to the interrogatories propounded to him.   The question to which the jury were to respond, as put to them by the court, was : "Was James McCarthy on the 20th Nov. 1850, of sound mind ? "   Without stating the acts or conversations of the testator, and without giving the facts or circumstances on which his opinion is based; without being certain in his own mind, whether he had seen the testator as late as the 20th November, 1850, he answers, when asked respecting his sanity, that at no time during his acquaintance with him did he have any doubt that he was sane ; that he had frequent conversations with him late in the fall of 1850, and neither saw nor heard anything from him to induce him to doubt his entire sanity.   With the exception of the circumstance that the witness says he had frequent conversations with McCarthy during the fall before the 20th November, when the will was executed, no reasons are given upon which the conclusion of the witness is founded, and no facts are stated from which the jury can have any practicable means of testing the accuracy of the opinion expressed.

The extent to which any of the authorities have carried the rule, even in the ecclesiastical courts of England, is, that after the witness has stated the facts and circumstances, then his conclusion or opinion, derived from and resting upon them, may be given.   5 Selden, 385.

The answer of the witness to the fifth interrogatory was rightly suppressed, for the reason that a witness cannot be permitted to give his opinion in answer to an inquiry which embraces the whole merits of the case and leaves nothing for the jury to decide. *Dewitt* v. *Barly*, 3 Smith, 347 ; 22 Eng. Ch.; *Jameson* v. *Drinkald* 12, Moore, 148 ; *Gibson* v. *Gibson*, 9, Yerger 329.

In *Gibson* v. *Gibson*, the inquiry was as to the competency of the testator to make a will, and the question to the witness was: "Whether from the situation in which he saw the old man, and from the facts stated to the jury, he believed the testator was then in his senses, *and capable of making a will?*" The court held that the latter part of the question, "capable of making a will," as it involved a question of law and fact, and the very question to be determined by the jury, was entirely illegal.

II. The second assignment of error is upon the same matter as the first. The question arises upon the same deposition of the witness, Brown, and has already been considered.

III. The third assignment of error is upon the ruling of the court on the motion to exclude portions of the deposition of John McCarthy. The motion was sustained in part, and portions of the deposition were stricken out, under the rule established by the court, that non-professional witnesses, not subscribing witnesses to the the will, could not be allowed to give their opinions as to the sanity or insanity of the testator.

The plaintiff moved to strike out so much of the sixth interrogatory as inquired of the witness concerning the state of McCarthy's mind as regarded his sanity. The court overruled the motion to strike out a part of the interrogatory, as requested, and struck out portions of the answer in which the witness gave his opinion concerning the sanity of his brother ; suffering the following portions of the answer to remain : "He, (James McCarthy,) before the year 1842, took a strange antipathy to me without any conceivable cause ; he would not speak to me ; he maintained a constant silence ;

Pelamourges v. Clark, et al.

we had never had any quarrel, no money transactions, nor any transactions of any sort, with each other, that could make him feel hard towards me. He went voluntarily to the Asylum under Dr. Ray. He then came out of the Asylum, and without my seeing him, he went and made a tour through the West. His insanity manifested itself in hostility to myself. I know nothing of its having ever assumed a religious character."

It is claimed by the plaintiff that in permitting that portion of the answer to remain, in which the witness speaks of the state of mind of his brother towards himself, the court departed from the rule established, and suffered the opinion of the witness to be given to the jury as evidence.

As an exception to the rule that the opinions of witnesses are not receivable in evidence, Mr. Best, in his work on the Principles of Evidence, Sec. 349, p. 391, cites those cases where the judgment or opinion of the witness on some matter material to be considered by the tribunal, is formed on facts, which, from their nature or number, it would be impossible to bring before it. The state or appearance of a building, or of a public document which the law will not allow to be removed from its repository, may be explained by a witness by a term expressing a complex idea; such as that it looked old, decayed, or fresh, was in good or bad condition, &c. " So also may the emotions or feelings of the mind of a party whose psychological condition is in issue; thus a witness may state whether on a certain occasion he looked pleased, excited, confused, agitated, frightened, or the like." Best, 392. Under this rule, we think it was permissible for the witness to state the feeling manifested toward him by his brother. These constituted facts, rather than opinions.

Certain portions of the answer of the witness to the sixth interrogatory, objected to by the plaintiff as hearsay, were rightly permitted to stand. It does not appear that the witness derived his information as to the facts detailed, from

hearsay.   For aught that appears, he spoke from his personal knowledge.   We may say further that the testimony given seems to us to be rather immaterial, and not of sufficient importance to require a reversal of the cause, if we even deem the testimony to be hearsay.

The eighth and eleventh interrogatories and the answers of the witness thereto, objected to by the plaintiff, and not stricken out by the court, are as follows:

"*Intg.* 8.   State particularly whether or not his insanity took the form of dislike to his relatives or friends?"

"*Ans.*   I think it showed itself in a measure in a strong antipathy to myself, without any cause possible to be conceived."

"*Intg.* 11.   State whether or not said McCarthy recovered from his insanity?"

"*Ans.*   I do not know; I only know that he left the Butler Hospital in Providence, and made a tour through the West.   Whether he was entirely restored, I could not say."

It is objected to the eighth interrogatory, that it is leading, and suggests to the mind of the witness the answer he is desired to give.   The test of a leading question, it is said, is to consider whether an answer by "yes" or "no" would be conclusive upon the matter in issue, or on any material part of the issue.   A question is objectionable as leading, when it suggests the answer to it, and not when it merely directs the attention of the witness to the immediate subject with reference to which he is interrogated.   Best's Evidence, sec. 436.   We think the question was not leading.

To the eleventh interrogatory the witness answered that he knew nothing; and if the question were liable to the objection made to it by the plaintiff, the judgment would not be reversed for the refusal of the court to suppress it together with the answer of the witness, if it appeared that he knew nothing.

IV.  The fourth assignment of error is based upon the refusal of the court to strike out certain portions of the deposition of the witness Allen.

Pelamourges v. Clark, et al.

The witness stated that he first knew the testator in 1834 or 1835; that he last saw him in the city of Providence, but could not recollect when; that he never saw him after he left there. That McCarthy was employed by him for some years as a drawer and designer of patterns for calico. During the latter portion of the time he was so employed, he was solitary in his habits; refused to allow any one to work with him, not even his nephew; that he seemed to cherish a hostile and bitter feeling towards all his relatives, without any conceivable cause; that they were all very kind to him, and yet he manifested that feeling of unnatural opposition, especially towards his elder brother, John McCarthy; that he was at one time in the Butler Lunatic Asylum; and that he never recovered from it during the time of his personal acquaintance with him.

The witness was then asked to "state whether or not said McCarthy recovered from his insanity." He answered: "I do not know whether he ever recovered from it or not. He did not, however, during my acquaintance with him." The motion of the plaintiff was to strike out this interrogatory, and the answer of the witness thereto. The court struck out the last three words of the interrogatory, so that it should read: "State whether or not said McCarthy recovered." In this shape the question, with the answer of the witness, went to the jury. The court had no power to change the form of the question after it had been answered by the witness. The same question was asked of the witness, John McCarthy, and the court did not strike out any part of it. The motion of defendant was to strike out the interrogatory and the answer, and his exception is to the refusal of the court to grant the motion. The first was somewhat objectionable, in assuming that James McCarthy was confined in the lunatic asylum on account of his insanity. We do not think, however, that the objection to it is of so serious a nature as to require a reversal of the judgment for the refusal of the court to strike out the question and answer.

V. The court refused to permit the plaintiff to read in

evidence to the jury, the depositions of Ann Clark and Rebecca Gibson, the present defendants, taken in a suit, in the District Court of Scott county; of Ebenezer Cook, plaintiff, and James McCarthy, defendant, to try the validity of a tax title to what is termed in the deposition the "McCarthy Mill Property," in Davenport. The deposition was offered, as stated by the plaintiff, to prove that the present defendants had no interest in the property devised by the will of James McCarthy. The depositions offered show that the deponents, the sisters of the testator, had quitclaimed all their interest in his real estate in Davenport. They do not state that they had no other interest in any portion of his estate, nor that they were not interested in contesting the will of their brother, and the plaintiff did not undertake to show that the property to which they had released their interest, was all the estate of which said McCarthy died possessed. To constitute error in the judgment of the court excluding the depositions, it was necessary to be shown that they had released all their interest in his estate, of every kind.

VI. The sixth assignment of error is upon the refusal of the court to permit the plaintiff to read to the jury the deposition of George Matthewson. The deposition was taken on the part of the defendants to be used in the County Court on the hearing of the application to admit to probate and record the will of said McCarthy. It is endorsed by the clerk: "Opened and filed, March 13th, 1856." On the trial in the District Court, the plaintiff offered to read said deposition to the jury, and objection being made by the defendants, the deposition was excluded. The objections to the deposition, nor the reasons of the court for excluding the same, are not stated in the record. It does not appear, however, from the bill of exceptions, that the deposition was taken upon any commission issued for that purpose, although taken out of the State. To obviate this objection, the plaintiff has had certified to this court by the clerk of the District Court, under a writ of certiorari, a copy of the commission, notice

and interrogatories, by virtue of which the deposition was taken.

We think it was no sufficient reason for refusing to permit it to be read, that the commission under which the deposition was taken, was issued in the name of the District Court, and by the clerk of said court. The clerk of the District Court is, by virtue of his office, the clerk of the County Court, Code, sec. 141, and although the law requires that the commission shall issue in the name of the court and under its seal, sec. 2455, yet in the absence of any special provision by the statute authorizing the suing out of a commission from the County Court for the taking of depositions to be used in the trial of any matter in said court, we see no objection to the commission being issued by the clerk of the District Court, under his seal of office, in the same manner as is provided for the taking of depositions out of the State, to be used on the trial of any cause in a justice's court. Code, sec. 2465.

This objection, however, could only have been taken by the plaintiff; and as he waived the same by offering the deposition in evidence, it could not be relied on by defendants; and to render the same of any avail, the objection should have been made before the trial commenced, on a motion to exclude the deposition. Section 2464. When a deposition is taken on interrogatories propounded by both parties, and is returned and filed in the court, it may be used by either party. It is required to be filed by the clerk in his office, and neither party has the right to withdraw the same. Code, section 2459. It is no sufficient reason for refusing permission to either party to read the deposition in the District Court, that it was not used by the party taking the same in the County Court. We cannot go back and enquire whether it was used there or not. It is sufficient that the deposition appears to have been regularly taken to be used on the trial of this cause in the County Court, and was returned to said court, and was opened and filed by the clerk, as appears by his certificate in the return to the writ of *certiorari.* We

have deemed it necessary to say thus much for the purpose of settling the rule of practice, at least, in such cases. The question whether any prejudice has resulted to the plaintiff, from the ruling of the court in excluding the deposition, remains to be considered.

It was taken by the defendants with a view of ascertaining what the witness knew tending to show insanity of mind in McCarthy, the testator. In answer to the interrogatories, he says, that he knew McCarthy in 1840, and hired him in 1843, to work for him; that he last saw him in 1847, or 1848, in Boston; that he did not know McCarthy during his residence in Davenport; and that he knew no facts tending to show insanity in him. We are unable to see how the exclusion of this deposition was in any wise prejudicial to the plaintiff. If he had not seen the testator for more than two years before the execution of the will, and knew no facts tending to show insanity in him, up to the time he last saw him, the testimony, however proper to be admitted as negative proof of the testator's sanity, in 1848, was not relevant to any of the issues submitted to the jury, and no injury resulted to the plaintiff from the suppression of the deposition.

VII. The seventh assignment of error is that the court refused to set aside the verdict of the jury and grant a new trial. The grounds upon which the motion for a new trial was urged, are: 1st, That the verdict was against the law. 2nd, The verdict was against the evidence. 3rd, That the jury were misled by the instructions given them by the court. 4th, That the court erred in refusing to give the instructions asked by plaintiff. 5th, On the ground of newly discovered evidence since the trial.

Upon the first and second grounds of the motion for a new trial, we may say that it does not appear to us that the verdict of the jury is against the law or the evidence, and that there is no reason why a new trial should have been granted for the reasons urged. We do not intend here to recapitulate the evidence. We may state that it is shown that

during the first part of the time that the testator was in the employment of Phillip Allen & Sons, at Providence, his disposition was pleasant and amiable, that he suddenly became irritable, morose and solitary in his habits, and refused to allow any one to work with him, not even his own nephew; and seemed to cherish a hostile and bitter feeling *against all his relatives,* and that without any conceivable cause. They were all very kind to him; and yet he manifested towards them a feeling of unnatural opposition, especially towards his brother John McCarthy, who had educated and supported him. Mr. Allen says, in answer to the interrogatory of the plaintiff, that his general demeanor, and particularly his bearing towards his relatives, impressed him with the idea that he was an insane man. He saw no change in his conduct up to the time he left his employment.

Dr. Ray, the superintendent of the hospital in which he was a patient, says that the testator often conversed with him on the subject of his insanity; that in any other subject than that of his delusions, his conversation evinced more than ordinary intelligence, and knowledge of the world; that no one, conversing with him on subjects not connected with his delusions, would have suspected him to be insane. This is the testimony as to his condition when he left the hospital of Dr. Ray, and came to Davenport, Iowa, in 1848. He resided at this place until November, 1850, at which time he made his will, the subject of the present controversy, and went down the Mississippi river to New Orleans. All that is certainly known of him afterwards, is, that he escaped from a lunatic asylum in which he was confined in New Orleans, during the prevalence of the yellow fever, and died soon after, in the year 1853. We think the evidence in the case was such that the jury were authorized from it to infer that the testator was not of sound mind at the time of making the will.

The proof of *monomania* exhibiting itself in an insane and unfounded dislike to a particular person or persons, either expressly recited in the will, or to be inferred from its

peculiar dispositions, has been held sufficient to overturn it. The evidence that such dislike was utterly groundless and irrational, must be quite satisfactory or it will not be sufficient. *Reay* v. *Coucher*, 1 Hagg. 75; *Dew* v. *Clark*, 3 Add. 79; *Tulleck* v. *Allinson*, 3 Hagg. 527.

The third and fourth grounds upon which the new trial was asked, were that the jury were misled by the instructions of the court, and that the court erred in refusing to give the instructions asked by plaintiff. We see no reason for holding that the jury misunderstood or were misled by the instructions given, and we have considered elsewhere in this opinion the correctness of the instructions asked by plaintiff and refused by the court. We think that no error is shown.

The motion for a new trial is also urged on the ground of newly discovered evidence. The plaintiff produces the affidavit of one Banigan, who states he knew the brothers, John and James McCarthy, in Providence; that in 1842, they took different and opposite sides in the troubles growing out of the *Dorr Rebellion*; that they thus became estranged, and never afterwards spoke to each other or had any social intercourse. This testimony was unknown to the plaintiff until after the trial, and it is now claimed that upon a new trial the same will tend to rebut any presumption of insanity in the testator arising from the hostility shown by James McCarthy to his brother. This testimony, it seems to us, could only tend to contradict and impeach that of John McCarthy, who swears that the antipathy of the testator to him, was without any conceivable cause; that they had had no quarrel, and that there had been no transaction of any kind between them that could make his brother feel hard toward him.

In addition to this, no such diligence has been shown by the party in obtaining the testimony of this witness, as to entitle him to a new trial. It is shown that the evidence was unknown to the plaintiff before the trial; and was not discovered until the cause had been submitted to the jury, nor until the jury had retired to consider of their verdict. This is

not, however, of itself sufficient to entitle the party to a new trial, even if the evidence is material and might have effected the result. He must show that he has used diligence to ascertain whether any such testimony was in existence, or that his diligence in this respect would have been unavailing.

VIII. The eighth, ninth, tenth and twelfth assignments of error, relate to certain questions asked by the plaintiff of the witnesses, Davis, Bowling, Eagal and Westlake, which were objected to by the defendant and ruled out by the court. These questions seem to us proper to be asked, and the court might well have allowed them to be answered. But we do not see that any such prejudice has resulted to the plaintiff from the ruling of the court, as to require that the judgment should be reversed. The witnesses were asked concerning the peculiarities of the testator; whether the substance of his conversations was reasonable and intelligent, and how his business affairs were conducted. It is not shown what the testimony of the witnesses would have been on these points, nor that it would have been different from that already before the jury. We may say generally that the questions do not seem to us objectionable in any material sense; but the difficulty with us, is, to see that the court has excluded any testimony that, if suffered to be introduced, would have caused the verdict of the jury to be given the other way. A new trial will not be granted, nor the judgment of the District Court reversed, for the improper rejection of testimony, when the court is satisfied that justice has been done, and when there is little reason to believe that a different result would ensue upon a new trial. 2 Graham and Waterman on New Trials, Ch. 9, p. 651. So a judgment will not be reversed for the erroneous admission or rejection of testimony which could have had no material influence on the verdict. *Wright* v. *Gaff*, 6 Ind. 416.

IX. The witness Herbert was asked by plaintiff: "From your experience as a mechanic, and your knowledge and observation of the building of other mills in Davenport, upon which you have wrought and assisted in building; and taking

into consideration the facilities for building then and since, state whether or not this mill was as expeditiously and economically built as the other mills in Davenport?" This question was overruled by the court and not permitted to be asked of the witness. It was already in testimony that the mill was commenced in the spring, and finished in June, 1849, and that McCarthy superintended its erection. But we cannot see how the question whether it was expeditiously and economically built, could have affected the question at issue, whether McCarthy was of sound mind in November, 1850.

X. It is next assigned for error that the court refused to charge the jury as requested by the plaintiff. It is no ground of error that instructions asked by a party are refused by the court, if they are given in the charge of the court in substance, though perhaps in different language; nor if they are mere abstract propositions, either irrelevant to the subject matter of inquiry, or bearing so remotely upon the question that the refusal of the court to give them can work no prejudice to the party.

Some of the instructions asked by the plaintiff, we think, were rightly refused as improper to be given. Among these we may enumerate the fifth[1] and twelfth,[2] the last part of the third,[3] and the first part of the 9th.[4]

---

1. The fifth instruction asked by the plaintiff, was as follows:

"A man may lawfully dispose of his property by will if he be not an idiot or a lunatic, and if the jury believe from the testimony that the testator was not totally deprived of reason at the time he made the will in question, then they should find the issue for the plaintiff."

2. The twelfth instruction asked by the plaintiff, to which reference is made by the court, was as follows:

"Monomania or partial insanity will not avoid a will unless it is shown that the will was the direct offspring of such partial insanity, and the act of making the will must be traced to such morbid delusion, and shown to be the result of it"

3. The third instruction as asked by the plaintiff, was as follows:

"The mere fact that the testator had acquired an aversion to his brother John, is not evidence that he was insane; and if the proof shows that the testator had such aversion, and also shows that the brother was a wealthy man, this may satisfactorily account for the fact that he was not mentioned in the will."

Others, though refused to be given by the court in the language in which they are framed by the plaintiff's counsel, are given in substance, if not in the same language, in the charge of the court. Among these we may include the first, second, fourth, sixth, seventh, eighth, tenth, eleventh, thirteenth, fourteenth, fifteenth and parts of the third and ninth. The length of this opinion already, will excuse us from the necessity of copying out these instructions as asked, and pointing out where the law, as to be given, may be found in the charge of the court. We think there was no error in the refusal of them, and that all the law asked for by the plaintiff applicable to the cause and proper to be given, is embodied in this charge. The sixteenth instruction asked, we think, might have been given without any prejudice to either party. It is so far an abstraction, however, and so remotely applicable to the inquiry before the jury, that the court might well, in its discretion, refuse it, without such refusal being error.

Upon the considerations already presented, we think the judgment should be affirmed. .

Judgment affirmed.

WRIGHT, C. J., *dissenting.*—In *Thorndike* v. *City of Boston*, 1 Metcalf 242, this rule is recognized: "Where evidence has been improperly received or rejected, and the verdict is found against the party taking the exception, and a motion for a new trial is made on that ground, such motion will not be granted, if the court can see plainly from the whole evidence, that independently of the evidence receiv-

---

4. The objectionable portion of the ninth instruction, as asked by the plaintiff, was as follows:

9th. "If the jury believe the testimony of the witness, M. C. Davis, and that the testator boarded with him during the last five months of his residence in Davenport, and until the will was made, and that during that time his conduct was like that of other men, and such as attracted no attention; and that he was civil, courteous and gentlemanly, correct in his habits, regular at his meals, neat and cleanly in his appearance, prompt and correct in his dealings, and that during that time no change was noticeable in him; then the jury have the right to consider him of sufficiently sound mind to enable him to make a will."

ed or rejected, the evidence in support of the verdict so de-
cidedly preponderates, that a verdict the other way would be
set aside as against evidence." And this, says the learned
Chief Justice in delivering the opinion, is "the rule recently
adopted in the courts of common law, limiting the broader
construction formerly put upon the powers of the courts in
this respect." *Rutger* v. *Farr*, 4 Adolph. & Ellis 56;
*Wright* v. *Taltham*, 7 Ib. 330; *Crevo* v. *Barrett*, 1 C. M.
& R. 919.

Following this rule as one in every respect safe and con-
sistent with the strictest legal principle, I cannot arrive at
the conclusion that this case should be affirmed, it being first
determined that there was error in the admission and rejec-
tion of certain testimony. I suppose the converse of the
rule above stated to be true; that is to say, that a new tri-
al should be granted unless the court can see plainly that in-
dependent of the evidence rejected or received, the evidence
in support of the verdict so decidedly preponderates, that a
verdict the other way would be set aside. The rule in its
direct and converse statement, seems to me to result, neces-
sarily, fairly and properly, from the plain and fundamental
principles governing trial by jury. It is the duty of a court
to permit none but competent evidence to go to a jury, and
to receive all that is competent. The province of the jury
is to aim at truth from the legitimate and competent evi-
dence thus submitted to them. With the exercise of this du-
ty, by the jury, when fairly and honestly exercised, there
should be no interference. And in discharging it, no prop-
er or competent evidence should be withheld from them; nor
should any incompetent be given them. True it is, that ca-
ses are constantly arising in practice, where, after a full and
thorough trial, it is manifest to a court, that testimony re-
ceived, or it may be rejected, erroneously, is entirely imma-
terial, and could in no manner change the result in a second
trial. And in such cases, there would certainly be no reason
or propriety in permitting further litigation.

Take a case, however, like the one before us, where there is

Pelamourges v. Clark, et al.

a large mass of testimony bearing upon a question as difficult of solution in its nature and character, perhaps, as any other ever determined by jurors ; where matters apparently of the smallest importance frequently have great and just weight in its determination; where minds are so apt to honestly differ ; where the testimony at least does not preponderate very decidedly *in favor* of the verdict; and I think it is departing very much from well established principles, and is an unwarranted interference with the province of the jury to say that the testimony improperly recived or rejected could have had, and would have had, no influence in assisting them in arriving at truth.    I certainly am very far from believing that if the verdict had been the other way, upon the testimony submitted, it would have been plainly wrong.    Viewing the case as if standing upon a motion for a new trial upon the ground that the verdict was against the evidence, I would not for a moment think of interfering with the finding ; and yet I do not hesitate to say that upon the testimony, if acting as a juror, I should have found the other way.    Thus regarding the proof, I of course cannot say that a verdict for plaintiff, the admitted errors being corrected, would be plainly wrong or that it should be set aside as against evidence.

But there is still another view of the case that I think strongly supports this position.    We concur in the conclusion that the opinion of a non-professional witness, as to the sanity or insanity of the testator, without a detail of the facts upon which the opinion is founded, is not admissible.    If accompanied by the facts, then I think upon authority, it would be admissible.    Had this rule been applied throughout the trial, I think other testimony, beside that referred to in the opinion of the majority of the court, would have been admissible and had a very decided influence upon the verdict. For this reason, therefore, a new trial should be granted.

I concur, for the most part, in the views presented and positions assumed in the majority opinion, except as above indicated.    In some instances I should be inclined to adopt a less strict rule in the examination of witnesses, when inquiring into the conduct and peculiarities of the decedent.

In my opinion the case should be reversed and remanded for a new trial. Such is not the opinion, however, of a majority of the court, and it must therefore stand affirmed.