JULE J. BOYER, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railroads:** KILLING STOCK: DOUBLE DAMAGES: NOTICE. A statement in a notice served upon a railway company pursuant to Code, section 2055, that an animal went upon the track because of a defective fence and was killed, while the proof showed that the accident occurred by reason of a defective cattle guard, does not constitute such a variance as will defeat recovery of double damages, no actual prejudice having resulted from the erroneous notice.

**Damages.** The fact that a mare killed by a railway company was with foal at the time may be considered in estimating the damage.

**Evidence:** OPINION. The opinion of farmers and stockmen familiar with the care of mares with foal, and their appearance during the period of gestation, as to whether a mare which had been bred was with foal, is admissible.

*Appeal from Davis District Court.*—HON. M. A. ROBERTS, Judge.

TUESDAY, MARCH 8, 1904.

ACTION to recover damages in double the value of a mare belonging to plaintiff, and killed on the right of way of the defendant company by a passing train. There was a jury trial, and verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Carroll Wright, John I. Dille,* and *S. S. Carruthers* for appellant.

*Taylor & Scarborough* for appellee.

BISHOP, J.—The defendant does not question the right of plaintiff to recover in this action the reasonable value of the mare killed. The grounds for reversal contended for are: (1) That a recovery of double damages should not have been allowed, for that the notice in writing given to defendant under Code, section 2055, was erroneous in the statement made of the facts, and misleading; and such notice could not, therefore, be made the basis of a double recovery. (2) That the court erred in allowing proof, as affecting the measure of recovery, of the fact that the mare killed was with foal, for that the same was not within the issues. (3) That the court erred in permitting certain witnesses to express their opinions respecting the condition of the mare as to being with foal, for that, if regarded as expert testimony, the witnesses had not shown themselves competent; if not expert testimony, then facts, only, and not opinions or conclusions, should have been allowed to go to the jury. We give consideration to these contentions in the order stated.

I. Code, section 2055, provides that a railway corporation failing to fence against live stock running at large, *and*

*maintain proper and sufficient cattle guards* at all points
where the right so to do exists, shall be liable
to the owner for the full value of stock killed
or injured on account thereof, etc. In case of
failure to pay such damages "within thirty days after notice
in writing that a loss or injury has occurred, accompanied
by an affidavit thereof, * * * such owner shall be entitled
to recover from the corporation double the amount of damages actually sustained by him." This provision of the Code
is identical with the provision appearing in the Code of 1873,
save that the portion thereof relating to cattle guards, italicized by us above, appears for the first time in the present
Code. The notice served upon defendant by this plaintiff
recited that the mare in question had been "struck and killed
about one mile east of Paris Station, * * * where your
company has the right and it is its duty to fence its track,
but has neglected and failed so to do, and was caused by want
of fence." In the petition filed, it is alleged that the mare
entered upon the right of way and track by passing from the
highway over a cattle guard in defendant's track, which cattle guard, it is alleged, was insufficient and out of repair. Is
the variance between the statement contained in the notice
given and the averment of the petition—the one charging
a defective fence, and the other a defective cattle guard—
fatal to the recovery of double damages? We think the question must be answered in the negative. Counsel for appellant call our attention to the fact that the statutory requirements having relation to the building of fences and the construction of cattle guards are found in separate sections (see
Code sections 2054, 2057), and, further, to the fact that under the law as it stood prior to the enactment of section 2055,
as found in the present Code, it had been held that only actual damages could be recovered in cases where stock entered
upon a right of way through or over a cattle guard. The following cases are cited: *Moriarty v. Railway,* 64 Iowa, 696;
*Rhines v. Railway,* 75 Iowa, 597. An examination of the

1. KILLING
stock; double
damages; notice.

cases thus cited will disclose the reasoning thereof to be that inasmuch as cattle guards are not, strictly speaking, part of a fence, the double-damage statute, being confined in its operation to injuries resulting from the want of a proper fence, and being penal in its nature, could not be given application, inasmuch as, to create or authorize the recovery of a penalty the intention to do so must be clearly expressed. And it is the argument that as the present statute does not, in terms, declare cattle guards to be a part of the right of way fence, and as they are not such in fact, notice of a defective fence will not support a double recovery; it being proven that the damage in fact arose from a defective cattle guard. This argument, in our view, cannot be accepted as sound. As the law stands at present, the same results follow whether the damage proceeds from a defective fence or from a defective cattle guard. The right to recover, formerly denied by strict construction, now exists by force of the express language of the statute. The notice served cuts no figure, therefore, as affecting the essential right of double recovery. It has to do only with the remedy. In all such cases the test of sufficiency is whether or not the notice given advises the company with reasonable certainty of the matters concerning which notice is required to be given. Now, the object of a notice in such cases is to apprise the company of the accident, and the time, place, and circumstances thereof, and to the end that the investigation may be made, upon which future action may be predicated. These requirements were met by the notice in the instant case, unless it is to be said that the error therein appearing destroyed its efficiency, or that, by reason of such error, it became misleading, and should therefore be condemned. How the animal got upon the right of way was, of course, material. But as we have seen, the liability of the company was the same whether the result complained of had its origin in a defective fence or a defective cattle guard. And we think it sufficient when it appears that the notice was in substantial compliance with the statute, and there-

from the company was enabled to make an investigation of the facts, and determine the question of its liability. This is said, of course, in view of the fact that the record in this case makes it clear that the company was in no sense misled to its prejudice by the erroneous statement contained in the notice. The result might be different if the fact was otherwise. *Brammer v. Railway,* 112 Iowa, 375.

II.  Upon the trial, plaintiff was allowed to prove, as affecting the amount of recovery, that the mare killed was with foal, whereby her value was increased over what the 2. DAMAGES.  same would otherwise have been. This evidence was objected to as-not within the issues, and the objection was overruled. Further, the court refused to instruct the jury, as requested by defendant, that, in allowing double damages, in no event should the value of the colt be taken into consideration. We think no error is presented by the rulings complained of. If true that the mare was with foal, such fact may well have been regarded as increasing her value. And certainly in such case the increase would be in the value of the mare. Prior to parturition the colt had no value inherent in itself, and this must be true because as yet it had no separate existence, no independent identity. Upon this thought is based the general doctrine that a sale, pledge, or other legal transfer of the dam carries with it, *ipso facto,* and without mention in terms, her unborn offspring. 2 Cyc., page 309, and cases cited in notes. This conclusion in no wise interferes with the doctrine accepted in this state, although rejected in most of the sister states, that lawful contracts may be made, having reference to the unborn offspring of animals. That doctrine goes no farther than to authorize parties to agree in advance upon a disposition of, or to fix the legal status of, property when it does come into existence. Such contracts are necessarily tentative in character. They do not deal with property *in esse,* or as having any present ascertainable value, for, in the very nature of things, it is not possible that any distinctive, tangible property right can

be said to exist until parturition has actually taken place.
Then, and not until then, can such a contract be made the
basis of any distinctive action or proceeding at law.   An ex-
amination of the cases relied upon by counsel for appellant
will disclose that they involve only contracts of the charac-
ter to which we have made reference.   *Hopkins, etc., v. Reid,*
106 Iowa, 78; *Thompson v. Anderson,* 94 Iowa, 554.

III.   The third and remaining ground upon which the
judgment is assailed is also untenable.   It was shown   that
about seven months before the accident the mare had been
3. EVIDENCE:   bred to a stallion.   The testimony introduced
   opinion.       over the objection of defendant was that of
farmers and stockmen, each one of whom testified that he was
familiar with the handling and care of mares while   with
foal, and their appearance during the period of gestation;
and, based upon such familiarity, they testified that the mare
in question, in their opinion, was with foal.   It is the gen-
eral rule that the testimony of witnesses is to be confined to
facts, and that their opinions are not admissible.   But a fam-
iliar exception to this rule obtains when questions involving
science, skill, trade matters, and the like, arise in respect of
which inexperienced persons cannot be expected to form a
correct judgment without the assistance of the opinions of
persons familiar with the intricacies of the subject in hand.
In such cases, opinion evidence given by instructed persons
is always receivable.   *Whitmore v. Bowman,* 4 G. Greene,
148; *Pelamourges v. Clark,* 9 Iowa, 1.   We think it fair to
conclude that the question whether the mare   in   question,
judging from her appearance, was or was not with foal, was
one to be determined not alone from such appearance—that
being all that could be described to the jury—but by con-
trast thereof with conditions arising in past experience.  This
the jury could not be expected to do, and it was not error,
therefore, to receive the testimony of men whose experience
had given them practical familiarity with the subject.  The
cases of *Dunham v. Rix,* 86 Iowa, 300, and *McMahon v. Du-*

*buque,* 107 Iowa, 63, cited and relied upon by counsel for appellant, as we read them, do not announce any rule in conflict with the conclusion thus expressed.

There being no error in the record, it follows that the judgment must be, and it is, AFFIRMED.