## Couch v. The Watson Coal Company.

1 **Evidence:** COMPETENCY OF: MASTER AND SERVANT. Where the incompetency and carelessness of an engineer employed by the defendant, a mining company, were alleged to have been the cause of an injury, proof that he was afterward discharged by defendant and by a subsequent employer was not competent evidence to support such allegation.

2. ———: ———: CUSTOM. Before the proof of a custom can be received to affect the rights of parties, the custom must appear to be so general that a knowledge of it by them may be presumed.

3. ———: ———: EXPERT. In an action against a coal company for injuries caused by the alleged negligence of its engineer, the superintendent of the company was properly allowed to state whether in his opinion the engineer was competent, without previously showing himself to be an expert.

4. ———: ———: QUESTION OF FACT. The plaintiff had the right to introduce proof of the character of defendant's machinery; whether or not he had knowledge of its alleged defects before the accident was a question to be determined by the jury under the instructions of the court.

5. ———: ———: NEGLIGENT ACTS OF EMPLOYE. Evidence of specific acts of negligence on the part of the engineer would be admissible as tending to establish the negligence of the defendant in continuing to employ him, but such evidence should not be admitted unless it be shown that the negligent acts occurred before the injury complained of.

*Appeal from Polk Circuit Court.*

### FRIDAY, APRIL 20.

THE plaintiff is a miner, and was employed by the defendant as such in its mines, and while in such employment received a severe bodily injury, and this action was brought to recover damages thereby sustained. The grounds upon which the plaintiff seeks to recover are stated in the charge of the court to the jury, as follows:

"1. The plaintiff seeks to recover in this action upon the alleged ground that at the time of the injury the engineer was incompetent and reckless, and that by reason of such incompetency and recklessness the plaintiff was injured, without fault or negligence on his part.

" 2. Another cause for the alleged recovery in this action is, that the cages and platforms were defective, and not properly constructed, and that by reason of such alleged defects the injury was caused without the negligence of the plaintiff."

The evidence tended to show that the mine of defendant was operated by means of a shaft some fifty or sixty feet deep, and that cages were used for the purpose of hoisting coal, the miners and their tools, when the latter needed repairing. The power consisted of a steam engine and the necessary machinery.

On the day of the accident the plaintiff desired to go up the shaft, and also to send up some drills to be repaired. He placed one drill in a cage that was hoisted up, and did not go himself in that cage because he was forbidden to do so by some one in authority, but remained below intending to go up in the descending cage after it should reach the bottom and return on the next upward trip. When this cage reached the bottom of the shaft the plaintiff stepped thereon for the above purpose, and while standing there was struck and injured by the falling of the drill he had placed in the other cage.

There was a jury trial. Verdict and judgment for the plaintiff, and defendant appeals.

*Parsons & Lewis*, for appellant.

*B. A. Williams* and *E. J. Goode*, for appellee.

SEEVERS, J.—I. The engineer's name was Brothers, and Brown was defendant's superintendent. The plaintiff, on cross-examination of the latter, was permitted to prove by him that defendant had discharged Brothers, and that he had afterward been employed as engineer at Redhead's coal mine and had been discharged therefrom, and also what Redhead had said was the cause of such discharge. The defendant made timely and proper objections to the admission of this evidence, and the same being overruled exceptions were taken thereto.

1. EVIDENCE: competency of: master and servant.

The only object and purpose of the evidence was to show that Brothers was an incompetent engineer, and we think

it had no tendency to prove such fact. The fact that he was discharged after the accident in no way tended to prove him a careless or incompetent engineer. He may have been discharged for a variety of reasons. It was not legitimate or proper to draw such a deduction from the fact of his discharge. Even the time of such discharge is not shown; whether it occurred immediately after, or in consequence of the accident, or at a remote period thereafter, does not appear. A somewhat similar question, in principle, was determined by us in *Campbell v. C., R. I. & P. R. Co.*, 45 Iowa, 76.

Much more objectionable was the admission of what occurred at Redhead's mine, and what the latter said in relation to the discharge of Brothers by Redhead. The occurrence at Redhead's was after this accident, and what he said was the cause of the discharge of Brothers was hearsay, and could have no tendency to prove any issue in the case.

II. The principal, if not the only, defect in the machinery consisted in the fact that there was no bonnet or covering to the cages; the probable effect of such would be to protect persons on such cages from being injured by any substance that might accidentally or otherwise fall from the mouth of the shaft. As tending to show that the cages were improperly constructed, and not adapted to the purpose for which they were used, and as tending to show that defendant was guilty of negligence in constructing and using such machinery, the plaintiff introduced as a witness one Reese, and proved by him that he had worked as a miner in coal mines for many years in Wales and Pennsylvania where steam machinery was used, and thereupon asked him: "What was the custom, or how was the machinery constructed—how were the cages constructed as to bonnets?" To this question defendant properly objected, but being overruled the witness replied: "I only worked in one shaft." The plaintiff then asked: "How was that as to bonnets?" To this the defendant again objected but was overruled, and the witness replied: "Well, there was what we called bonnets or covers there in that one shaft." Conceding that it be proper to prove such a custom for the purpose of showing the cages used in this mine

were improperly constructed, still we think this evidence was improperly admitted. Before a custom can affect the rights of parties, it must be so general that a knowledge thereof by them may be presumed. For instance, before the defendant could be deemed guilty of negligence in the construction or use of the cages, the custom under which it was sought to make it liable should be so general that the defendant could be presumed to have knowledge of its existence. 2 Parsons on Contracts, 241, *note*. The fact that bonnets were used in one mine in Pennsylvania or Wales had no tendency to prove the existence of such a custom there, much less here. Besides, mines, of necessity, must be of various depths, and what would be proper machinery for one might not be for another. What is customary in Pennsylvania may not be so here. If it had been shown that operators of mines in this State similarly situated, and using substantially the same kind of machinery, generally constructed cages with bonnets, it could be reasonably presumed that defendant had knowledge of such custom, and the failure to do what was usual and generally done by others in a similar business and under similar circumstances would have a tendency to show that these cages were improperly and negligently constructed.

III. The defendant asked Brown, its superintendent, "You may state whether Mr. Brothers was a careful, competent and prudent engineer," and in substance asked Mr. Yeomans, by whom Brothers had been employed, the same question. The court sustained plaintiff's objections to these questions. We do not believe these witnesses showed themselves competent to testify to the facts desired to be elicited, under the rule laid down in *Pelamourges v. Clark*, 9 Iowa, 1. Neither of these persons were practical engineers. They did not belong to the guild, trade or profession, nor did they pretend to have the requisite knowledge.

But it is insisted that Mr. Brown should have been permitted to answer the question, because the tendency would have been to show that defendant was not negligent in employing the engineer or continuing him in its employment. It is not the company but its officer having charge of this

department of their business that is expected to use ordinary care in the employment of engineers and other employes. His carelessness and knowledge in this respect are the carelessness and knowledge of the company. We therefore think it was material and important that Mr. Brown should have been per-mitted to state whether or not Brothers, in his opinion, was a careful and prudent engineer, subject to the right of cross-ex-amination as to his means of knowledge. It seems to us this was the very gist of the inquiry. It matters not whether Brown was an expert or not, but because it was claimed he had been guilty of negligence in continuing a careless and incompetent engineer in the employment of the company. This view is expressly sustained by *Frasier v. Penn. R. Co.*, 38 Penn. St., 104.

IV. The witness, Stahlgren, was asked on cross-examination by defendant certain questions, which were designed to elicit the fact that the drill could not be placed in certain designated positions in the cage. Objection to these questions was sus-tained on the ground that it was not proper cross-examination. In this ruling there was no error. However material the proposed evidence may have been, it was not proper to elicit it on cross-examination of this witness.

V. The plaintiff was asked, when on the stand as a witness, whether the cages had any covers on them. An objection by the defendant was overruled, and counsel claim the admission of the response to the question pre-sented a false and immaterial issue, for the reason that the plaintiff knew the condition of the cages during the time he worked for defendant, which was for some time previous to the accident. In this view we do not concur. The plaintiff must be permitted to introduce his evidence as he deems proper. He, therefore, had the right to prove in the first instance there were no covers on the cages, and if it was subsequently shown that plaintiff had knowledge of such defects, if such they were, this was a matter for the consideration of the jury under the in-structions of the court.

VI. The plaintiff proved by one Gould that he worked in the mine and was at the mouth of the shaft every time he

*4. ——: ——: question of fact.*

passed up and down, and thereupon asked him, "Have you noticed, or did you notice, the manner in which the cages were raised up above the caps and landed?" The defendant made timely and proper objections to this question, but the same were overruled, and the witness answered: "I had noticed how the cages were landed when Brothers was there. They was sometimes hoisted up so they landed very carefully, and at other times they were hoisted a foot or a foot and a half. I think I have seen them hoisted as high as two feet." The defendant again objected to this evidence, because it was not shown that the matters testified to by the witness took place prior to the accident. Whereupon the court asked the witness, "Was this prior to the accident?" And the reply was, "I could not swear it was, positively. There was a change of engineers frequently about that time, or just before they had a green hand. I could not tell the exact date." Exceptions were taken to the admission of the foregoing evidence, and the witness said in response to another question asked by the court: "* * * I could not tell or set any particular day; whether it was just before or immediately after; it was a common occurrence that the cages were hoisted higher than was necessary to land them."

It is claimed on the one hand, and not denied on the other, that the raising of the cages so high above the platform tended to show that the machinery was defective and unmanageable, or that the engineer was careless and incompetent. It is insisted that particular acts of negligence are not admissible as evidence for the purpose of showing the incompetency of the engineer, and this view is sustained by *Frasier v. Penn. R. Co., supra.* We deem it unnecessary to determine this question, for if the evidence was admissible for any purpose then there was no error in admitting it.

A somewhat different view from the rule established in Pennsylvania was taken in *P., Ft. W. & C. R. Co. v. Ruby,* 38 Ind., 294, and such evidence held admissible. But in an opinion delivered after a petition for a rehearing had been filed, it is stated that the evidence was admitted on the *sole* ground that the master of transportation of plaintiff in error

was present on an occasion when one of the alleged specific acts of negligence occurred. And it is further said, "that such evidence must relate, we think, to a time prior to that at which the plaintiff received the injury. That which had not yet happened could be no notice to any one." As thus limited there is no conflict between these cases, for the reason that *Frasier v. Penn. R. Co.* does not determine what the rule should be if the defendant, or any of its principal officers, had knowledge of such specific acts. The Indiana case is based, it seems to us, on the correct theory that before the plaintiff can recover on the ground of negligence on the part of the engineer in the case at bar, he must establish: 1. That the accident was caused by such carelessness and negligence; and 2. That the defendant employed him, or continued him therein, after it had reasonable knowledge of his carelessness and negligence, and that knowledge on the part of the superintendent constitutes notice to the defendant.

However it may be as to other corporations, we have no doubt under the testimony that the defendant should be held bound by the knowledge of its superintendent. He had full charge of the mines. It was his duty to see that the employes performed their several duties in a careful and prudent manner. There was but a single mine and but one hoisting apparatus and engineer. The superintendent had the opportunity of personally observing how the engineer performed his duty. As the plaintiff must establish negligence on the part of the defendant in employing, or continuing to employ, the alleged negligent engineer, we think the evidence was admissible for this purpose, but that the defendant cannot be held liable or chargeable with knowledge thereof unless it can be satisfactorily shown that its superintendent had knowledge of such specific acts of negligence. Nor do we believe that evidence of actual knowledge is necessary, but it may be inferred from circumstances.

If the superintendent, as a reasonably careful and prudent man, must have had knowledge of these specific acts, then the defendant is bound thereby. It must be supposed the superintendent performed his duty and was reasonably watchful.

If the acts of negligence were numerous, he would be the more likely to know of them than if they were not so numerous or consisted of but a single act. This would necessarily be a question for the jury under proper instruction of the court. We think there was evidence tending to show that the superintendent had knowledge, or as a reasonably careful and prudent man must have known of the alleged specific acts of negligence testified to by Gould, and that therefore, so far, there was no error in the admission of the evidence. But we feel constrained to say that the evidence should not have been admitted, because it was not shown that the specific acts of negligence occurred before the accident. If it cannot be shown to the satisfaction of the court that the acts of negligence occurred prior to the accident the evidence should be rejected, and this should be the rule if it is left in doubt. If, however, the witness is able to state facts and circumstances from which the ultimate fact can be determined, the question should be submitted to the jury under proper instructions.

VII. It is insisted, with much earnestness and ability, that the court should have directed a verdict for the defendant, and that the evidence fails to sustain the verdict. Under the rulings herein made, it is hardly probable the evidence will be the same on the next trial, and, therefore, we deem it unnecessary to determine these questions.

VIII. The length of this opinion forbids that we should examine the instructions objected to in detail. It is sufficient to say that in the main we deem them correct. They, however, should be so modified on the next trial as to present the grounds of defendant's liability in respect to the engineer, so as to present fairly the question as to defendant's knowledge of his incompetency as herein indicated.

REVERSED.