L. L. TAYLOR, Adminstrator of the Estate of PHILLIP SWAB, Deceased v. STAR COAL COMPANY, Appellant,

**Evidence:** CUSTOM: *Mining.* Evidence of a custom in a mining district that an operating company should look after the safety of roofs of entries to the mines, and of the company's responsibility for the condition of such roofs when notified of their defects, and that an "entry" meant a passageway high enough for mules to pull small cars through, is admissible in an action for personal injury resulting from falling of a roof, where the plaintiff was engaged in an entry.

SAME. Where a witness in an action for damages from the falling of a roof of an entry to a mine, was asked whether, in view of the custom in mines, a miner would naturally expect that he was safe from the fall of the roof, in standing where plaintiff did when he was injured, there was no error, when the answer was in the negative and that a miner would not think there was any risk in standing three and one-half feet from where the dangerous part of the roof seemed to end; since the question did not necessarily call for the witness' judgment as to plaintiff's negligence, and the customary method of doing the work in which plaintiff was engaged was a proper matter of inquiry.

PLEA AND PROOF. Where a plaintiff in an action for personal injuries received in a mine, on being asked if he would have gone to work, knowing that some of the roof was loose, if defendant's superintendent had not promised to fix it, answered that he would not,

there was no error, as the petition charged that plaintiff was guilty of no negligence, and that he informed the superintendent of the danger, and was told to continue work, and that the danger would be remedied.

EXPERTS: *Cross-examination*. In cross examination of an expert witness, the examiner should be allowed to assume almost any state of facts, for the purpose of testing the witness' knowledge or credibility.

**Negligence:** JURY QUESTION. Where plaintiff, having knowledge of a loose place in the roof of a mine, within a few feet of where he was working, complained of the danger to the operator's superintendent, who directed him to continue work, and promised to remedy the danger, and on the next day, without this being remedied, plaintiff was injured by the falling of the same, and the danger had not been so apparent that a man of reasonable prudence would have discontinued in the service, the question as to whether the plaintiff assumed the risk was for the jury.

SAME. Where plaintiff showed that he was instructed not to remove slate from the roof, but to "brush up" from the bottom; that he was not working at "room rates" but was paid by the yard at "entry rates," and that in making entry it was customary for the company, and not the miner, to look after the roof, and that plaintiff had notified the operator's superintendent of danger in the roof, but was instructed to continue work, and told that the roof would be repaired, and the danger was not so great that a reasonable man would quit on account thereof, and evidence for the defense showed that the defendant was doing "room work" and was making his own place to work, and was alone responsible for the safety of the roof, the question of contributory negligence was for the jury.

SAME. Where the evidence conflicted as to whether one suing for personal injuries received by the falling of a roof in a mine was making his own place to work, or whether the company was bound to see to the safety of the place, the question of liability was for the jury.

SAME. Where it was shown that plaintiff, engaged in mining coal for defendant, was at work in a mine entry, and informed defendant's superintendent of danger from looseness of rock in the roof entry, but continued work at the superintendent's request, and the loose part afterwards fell and carried with it other parts which were apparently solid, which later fell upon and injured plaintiff, there was evidence of negligence.

VIOLATING MINING LAW. Where the evidence showed that the plaintiff had no control over the roof and was directed not to remove any slate therefrom, the question of liability is for the jury, and McClain's Code, section 2463, making it a misdemeanor for any

miner to neglect or refuse to securely prop or support the roofs and entries under his control in the mine where he is working, has no application.

.*Sunday Law*. Where through the negligence of the owner of a mine, an employe is injured while laboring in the mine on Sunday, he may recover damages therefor, regardless of McClain's Code, section 5438, making it a misdemeanor to labor on Sunday.

INSTRUCTIONS. An instruction that defendant was required to furnish a reasonably safe place for plaintiff to work, though erroneous when taken alone, is harmless when other parts of the instruction emphasize that defendant was bound only to use reasonable care to furnish a reasonably safe place in which plaintiff should work.

.*Same*. An instruction which makes the place of work an important inquiry, but states that, notwithstanding the accident may have been an entry, yet the defendant was not liable, if, by general usage, or for any other reason, it was plaintiff's duty to look after the roof, is not erroneous, as making liability depend wholly on the place where the work was done, rather than the character of the work.

.*Appeal from Appanoose District Court.*—FRANK W. EICHELBERGER, Judge.

FRIDAY, DECEMBER 15, 1899.

ACTION at law to recover damages for injuries sustained by Phillip Swab, due to the fall of a part of a roof in defendant's coal mine. After the case was tried in the court below, Swab died, and his administrator has been substituted as plaintiff. Defendant filed a general denial, and also pleaded that the injury occurred in a double room or long wall, and not in an entry which it was defendant's duty to maintain. Some other issues were tendered, which will be referred to in the body of the opinion. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed*.

*Claude R. Porter* and *George D. Porter* for appellant.

*C. F. Howell* for appellee.

DEEMER, J.—After the evidence was fully adduced, but before argument to the jury, plaintiff was permitted to amend his petition, charging that he made complaint of the condition of the roof to the defendant's superintendent, and asked that the same be taken down, and that the superintendent then and there promised to make the necessary repairs, and directed plaintiff to continue in his work. He also pleaded some other facts tending to show his freedom from contributory negligence. Defendant moved to strike the amendment because filed out of time, and because it tendered a new issue. This motion was overruled, and an assignment of error is based thereon. The matter of allowing amendments rests within the sound discretion of the trial court; and that discretion is rarely interfered with, unless some prejudice appears. The amendment simply conformed the pleadings to the proof that had already been offered, and defendant did not ask to reopen the case, for a postponement, or for a continuance, that he might present additional evidence bearing on the issue thus tendered. It is apparent that the parties had fully covered the ground before the amendment was filed. Hence no possible prejudice resulted. There was no error in the ruling.

II. Evidence was adduced over defendant's objections tending to show the custom, in the district where defendant's mine was located, with reference to whose duty it was to maintain and sustain the roof and sides of entries in mines; as to the custom when a mining company has been notified of defects in the roofs of its mine; and as to the difference, if any, in custom and usage respecting the responsibility of the company for roofs in entries and in rooms. These witnesses testified that it was the custom of companies in this mining district to look after the roofs in the entries, and that the term "entry" meant a passageway high enough so that mules could take small cars through. Some of them testified that by the same custom the companies were not expected to look after

the roof in rooms where the miners worked until they were notified of some defects therein. There was evidence tending to show that, when injured, Swab was engaged in work in a double header, or entry, or was removing coal or other material for the purpose of making an entry. Now, while it is almost universally held that evidence of custom is not admissible for the purpose of excusing negligence; yet it is admissible in certain cases to prove negligence. In the case before us the general rule, no doubt, is that the master must provide the servant with a safe place in which to work; but, as the servant is from time to time making that place for himself, the law does not fix the exact time when his duty to look after himself ceases, and that of the master begins. Evidence as to the usage or custom among mines in that particular district with reference to the time when the duty of the master respecting the care of the roof begins was properly admitted. Until a duty arose with respect to the roof, there would be no negligence on the part of the master; and, as the law does not attempt to fix the exact period when that duty commenced, evidence as to custom was clearly admissible. *Bergquist v. Iron Co.,* 49 Minn. 511 (52 N. W. Rep. 137); *Whitsett v. Railroad Co.,* 67 Iowa, 155; *Jeffrey v. Railroad Co.,* 56 Iowa, 546; *Coats v. Railway Co.,* 62 Iowa, 491; *Hamilton v. Railroad Co.,* 36 Iowa, 36; *Couch v. Coal Co.,* 46 Iowa, 17; *McKean v. Railroad Co.,* 55 Iowa, 192; Bailey, Master's Liability, p. 31. To a witness of plaintiff a hypothetical state of facts was submitted, and he was asked whether, in view of the custom and usage in mines, a miner would naturally expect that he was safe from the fall of the roof, and would feel that he was running no risk in standing where it is claimed plaintiff did. In answer, the witness said: "No, sir; he would not feel that he was running any risk. I would not think that a miner standing three and one-half feet from where it seemed to end would naturally expect it to fall three and a half

further on, where it would be." This is, no doubt, a border-line question; for it is generally held that a witness cannot usurp the functions of the jury, and declare the defendant negligent or the plaintiff free from contributory negligence. The customary method of doing the work in which plaintiff is engaged is a proper matter of inquiry, however. *McKean v. Rilroad Co., supra; Hamilton v. Railroad Co., supra.* The tendency of roofs to fall, and the danger to be apprehended therefrom, is not a matter of common knowledge. Only those familiar with such matters know the dangers to be apprehended, and we are of opinion that it was proper for plaintiff to show the usual and customary test of safety. See the *Bergquist Case, supra.* While the question was not very happily framed, we think, in view of the answer given, it did no more than call for the opinion of the witness as to whether the roof was likely to break. We are not to be understood as approving a rule that will substitute the judgment or opinion of a witness for that of the jury. The question propounded did not of necessity call for such judgment, and the answer clearly indicated that the witness was simply giving his opinion as to whether a certain strata of rock or slate was likely to fall, and as to the usual and customary test of safety. As sustaining the rule announced, see *Betts v. Railway Co.,* 92 Iowa, 343 (26 L. R. A. 248).

III. Plaintiff was asked whether he would have gone to work in the mine, knowing that some of the roof was loose, if the defendant's superintendent had not promised to fix it; and he answered that he would not. This evidence is proper, in view of the issues tendered by the amendment to the petition. The cross-examination of some of defendant's expert witnesses was objected to because the questions assumed a state of facts not in evidence. In cross-examining such a witness, it is not necessary that the examiner confine himself to the facts established in the case. He may assume almost any state of facts,

for the purpose of testing the witness' credibility, and the extent of his knowledge. *Bever v. Spangler,* 93 Iowa, 576, and cases cited.

IV.    Defendant complains of the overruling of his motion to take the case from the jury, filed after plaintiff had rested his case.   It is argued that the injury grew out of the risk incident to his employment, and that plaintiff was guilty of contributory negligence.   It appears that plaintiff had knowledge of a loose place in the roof within a few feet of the place where he was standing when injured, and that he waived the defect by remaining in the employ of the company and pursuing his work.   The evidence tended to show that he made complaint of the condition of the roof to the defendant's superintendent the day before the accident occurred, and that the superintendent then promised to repair or remedy the same.   As the accident occurred within twenty-four hours thereafter, it was for the jury to say whether or not such time has elapsed as would preclude all reasonable expectation that the promise would be fulfilled.   That question was properly submitted to the jury, and they evidently found for the plaintiff.   The danger was not so apparent that no man with reasonable prudence would have continued in the service of his master while the defect remained.   Plaintiff was directed by his superior to continue at his post, and was promised that the defect should be remedied.   Under the circumstances disclosed, plaintiff did not assume the risk. Again, it is said that plaintiff was bound to look after the roof, and that defendant is not responsible for the consequences of the fall.   The evidence as to the duty, if any, resting on the defendant, was conflicting.   On the one hand, it was shown that plaintiff and another were directed to work upon what is called a "double header," or entry way, and was instructed not to remove the slate and other material from the top, but to "brush up" from the bottom of the entry; that he was not working at "room rates," but was

paid by the yard, at entry rates; that he was directed to take up the bottom, and make the way five feet in height, so that a mule could pass through; that the company was following up the work by laying a track, which it placed only in entries as they were extended to the face of the coal back; and that it was the custom and rule in such cases for the company to look after the roof. On the part of defendant it was contended, and it afterwards introduced evidence tending to show, that the place where plaintiff was at work was a "room," and that, as he (plaintiff) was making his own place to work, he alone was responsible for the condition and care of the roof. This dispute was properly submitted to the jury, and it would have been error for the court to have taken the case from them, in view of the evidence offered on behalf of plaintiff. Plaintiff knew of a loose place in the roof, but, by tapping it with his pick, he concluded that it had "feathered out" three or four feet from the place where he was injured. He was promised that the dangerous place should be removed or remedied. He was working four and one-half or five feet from the face of the coal, and had no reason to apprehend that the roof, if it fell, would engulf him in its fall. No duty of inspection rested upon him, if plaintiff's view of the case is to be adopted; and he had reason to believe that the defendant would exercise reasonable precautions to protect him from danger. It was for the jury to determine whether or not plaintiff was guilty of contributory negligence. Further, it is argued that plaintiff cannot recover because the statute (McClain's Code, section 2463) made it his duty to prop or support the roof and entries under his control. Whether or not this roof was under the plaintiff's control was a question for the jury. Plaintiff's evidence tended to show, not only that he had no control over the roof, but that he was instructed not to remove any slate therefrom. If this be true, then the statute has no application. *Corson v. Coal*

*Co.,* 101 Iowa, 224. The accident happened on Sunday, and it is said plaintiff cannot recover because of his violation of the Sunday law. That question is put at rest by *Gross v. Miller,* 93 Iowa, 72 (26 L. R. A. 605), and we need not give it further attention.

V. Again, it is argued that defendant is not liable because plaintiff was furnishing his own place for work, and defendant owed him no duty with respect thereto. There was a conflict in the evidence on this proposition, and the question was properly submitted to the jury.

VI. Some of the instructions are criticised. In part of one the court said that the defendant must have furnished a reasonably safe place in which plaintiff should work. Taken alone, this expression was erroneous, for the reason that defendant was only required to use reasonable care to furnish such a place. But the very instruction from which this statement is extracted states the correct rule, and other instructions emphasize the thought in such a manner as that the jury could not possibly have been misled. Further complaint is made of the instructions in this: that the duty of the company is made to depend wholly on the place where plaintiff was working, rather than upon the character of the work. This is a misconception of the instructions. True, the character of the place was made an important inquiry, as it should have been; but the liability of the company was ultimately made to depend upon its duty with reference to the roof. The court expressly stated that, notwithstanding the accident may have occurred in an entry, yet the defendant was not liable, if, by general usage or custom, or for any other reason, it was plaintiff's duty to look after the roof at the place where he was engaged at work. There was no error in the instructions complained of.

VII. Lastly, it is insisted that there is no evidence of negligence. The jury may have found, not only that the

loose part of the roof . fell, but that it took with it another part, which was apparently solid, and that this latter part fell upon the plaintiff. If the loose part had not fallen, then we would be quite ready to agree with defendant's counsel; for no one had reason to anticipate that an apparently solid portion of the roof would fall. But the part which was loose did fall, and carried with it the solid part, which injured the plaintiff. The jury may well have found that, had the loose part been removed or propped up, the accident would not have happened. As the defect was not removed, and as the loose part carried with it the slate which did the damage, the jury was fully warranted, under the facts disclosed, in finding the defendant negligent. The judgment is AFFIRMED.

GRANGER, J., not sitting.