## W. H. BARRETT V. NESTER DESSY.

No. 15,666.   (97 Pac. 786.)

SYLLABUS BY THE COURT.

1. VERDICT—*Scope.* In the absence of special findings, a general verdict for the plaintiff is a finding of all the material facts alleged in the petition necessary to support it.

2. MINES AND MINERALS—*Duty of Mining Boss—Loose Rock Overhead.* Under the provisions of section 4129 of the General Statutes of 1901 it is the duty of the overseer, or "mining boss," employed by the owner of a coal-mine to see that as a miner advances his excavations therein all loose rock overhead is carefully secured against falling in upon the traveling-ways.

3. ——— *Injury to a Miner—Contributory Negligence.* It was not error to refuse to give an instruction to the effect that, if the loosening of the rock in the entry of a mine had been caused by excavations made by the plaintiff in mining in his room, he could not recover for injuries caused by such rock falling upon him, without qualifications as to his own care or knowledge of the danger.

4. ——— *Same.* A miner, in performing the work assigned to him, although bound to exercise due care for his own safety, may assume, in the absence of notice to the contrary, that the owner and the overseer have performed their duty in respect to the care of the entry where he is at work when injured.

Error from Cherokee disrict court; CORB A. McNEILL, judge. Opinion filed October 10, 1908. Affirmed.

*W. B. Glasse, E. L. Burton,* and *C. D. Ashley,* for plaintiff in error.

*E. V. McNeill, Al. F. Williams, A. H. Skidmore,* and *S. L. Walker,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: This action was brought by Nester Dessy against W. H. Barrett to recover damages on account of injuries alleged to have been received.

through the "fault, recklessness, carelessness and negligence of the defendant, his agents and representatives," while Dessy was working in Barrett's coalmine in Cherokee county, Kansas.    The petition alleged:   •

"That on the said 29th day of December, 1904, and while the said plaintiff was engaged in the regular and ordinary occupation of mining coal, and shoveling the same into a car on the track of the defendant in the said mine referred to above and described herein, there fell from the inside top of said entry, close to and projecting near to the room of this plaintiff, or where he was working, a large slate, stone, or rock, about one foot wide, about three feet thick and about ten feet in length, which said stone, or rock, in falling fell upon and struck this plaintiff upon the head, face, side and back, thereby suddenly and violently forcing him downward, and mashing and bruising and lacerating his side, back, and face, and breaking his left ankle, breaking his nose, and breaking two of his ribs, causing him great physical pain and misery and permanent injury, and disabling him greatly to his damage.  . . . Plaintiff alleges further that said injuries and damages aforesaid occurred to him solely and wholly on account of the fault, recklessness, carelessness and negligence of the defendant, his agents and representatives, being to this plaintiff unknown, and he can not state the same to this court, but of which he made inquiry of the foreman in said mine, in not using and exercising proper care and caution in the proper bracing and propping of the roof in the said mine, and in the lack of skill and care in the working of the said mine, and in the failing to provide necessary props for the bracing of the roof in the said entries."

The answer pleaded (1) a general denial, and (2) contributory negligence on the part of the plaintiff. The reply was a general denial.    The plaintiff having recovered, the defendant asks for a reversal of the judgment.

There was an entry in the defendant's mine, some distance below the surface, about six feet wide and from five to six feet high, extending east and west.

The plaintiff, a coal-miner, in pursuing his work turned a room or place in which to mine coal from the north side of this entry, cutting through what is called a "horseback" or rock about three and one-half feet thick, which at that point formed the side of the entry. The width of the opening to this room was about six feet, and its height three and one-half feet, but in cutting through the horseback the rock above fell, making the mouth or opening through the horseback about five feet high, and even with the brushing over the entry. At the time of the accident the plaintiff had mined or excavated his room north eighteen or twenty feet from the side of the entry. He had shoveled coal from this room into the entry between the rails of a track extending along the entry, and between the north rail and the opening of his room. He was engaged in shoveling this coal into a car standing on this track opposite to his room. The car was about four feet wide and about two and one-half feet high. The position of the plaintiff and the injuries he received were stated by a witness as follow:

"Ques. Now, I wish you would tell the jury just the condition you found him in and the surroundings there where you did find him. Ans. Why, it seemed to me Mr. Dessy had been loading a car, and the car was just partly loaded, and it seemed to me that his feet was on one side of the car shoveling coal in the car—not exactly on one side, but one end of it, partly sideways of the end of the car, shoveling coal in the car, and the rock must have come down and crushed him, and got him down, and the rock rested partly on his body and partly on the car.

"Q. Was any portion of the rock broken off and in the car? A. As closely as I can remember, the rock was broke lengthwise over the car, and the other part of it laid slanting off of the car, and rested on Dessy."

The rock which fell upon the plaintiff was about six feet long and about three and one-half or four feet wide. The allegation of the plaintiff is that this rock fell from its position over the entry, while the defend-

ant contends, although not clearly alleged in the answer, that it fell from over plaintiff's room, or the mouth of his room. Several witnesses testified that it fell from above the entry, and others that it fell from above the mouth of the plaintiff's room. The general verdict for the plaintiff is a finding of the material facts alleged in the petition necessary to support it. (*Bixby v. Bailey,* 11 Kan. 359; *Martin v. Hoffman,* 77 Kan. 185, 93 Pac. 625.) That the rock fell from the roof of the entry is thus·established by the verdict. There was, however, evidence tending to show that this rock, before it fell, extended from the roof of the entry over, or partially over, the place where the horseback had been removed. There is no claim that it extended into the plaintiff's room beyond the horseback, where coal had been mined and removed by the plaintiff. Possibly there was some confusion in the testimony as to the precise place from which the rock fell, from the fact that the roof of the entry immediately adjoined the roof of the mouth of the room. That the rock, or a large part of it, fell from above the entry is certain from the fact that it fell upon the car standing in the entry, with a space of about a foot from its north side to the north line of the entry.

The defendant assigns as error certain instructions given to the jury, and the refusal to give other instructions requested by him. It is said that the court assumed that the alleged defect was in the entry, and did not fairly submit that question of fact to the jury. This complaint is based mainly upon the language of the ninth instruction, which stated in effect that, if the defect in the top of the entry from which the rock is alleged to have fallen was a latent defect of such recent origin that the defendant by the exercise of reasonable diligence could not have known of it, he was not liable. The court referred to the top of the entry in this and other instructions criticized in this respect because the petition alleged that the defect was there.

The defendant admitted by his answer, and admits in his brief, that the rock which fell upon the plaintiff was dangerous, and therefore the court could rightfully assume that such was the fact, and properly alluded to the top of the entry as the place from which it was alleged that it had fallen, thus presenting to the jury the claim of the plaintiff with respect to the place of the alleged defect. In the eleventh instruction, in presenting the defendant's claim that the plaintiff was injured through his own negligence, the court fairly stated the defendant's contention with reference to such place and the plaintiff's duty concerning it. The theories of the respective parties were thus fairly presented without assuming that either was true.

It is urged that the court erred in giving the sixth instruction, which called the attention of the jury to the "chief inquiries" for them to consider—among others, whether the plaintiff was injured while at work in the defendant's mine, and, if so, whether such injury was caused by the negligence of the defendant. Complaint is made because the court did not include among these chief inquiries the question of contributory negligence. The court was here stating the rules applicable to the plaintiff's claim, and afterward in proper order stated the rules relating to contributory negligence, which is a matter of defense. Separate statements of such claims are not only usual, but, to prevent confusion, are desirable. It is true that the inquiry concerning the defendant's negligence was no more important than that relating to the plaintiff's negligence, but it was first in order. The chief inquiries to which the attention of the jury was thus directed were matters necessary to make out the plaintiff's case in the first instance, while the things that would defeat such a case were just as emphatically stated in other instructions. Reading the instructions together, there was no room for confusion or misunderstanding.

The defendant requested instructions designed, as counsel say, to call the attention of the jury to the question "whether the plaintiff himself created the dangerous place." One of these is as follows:

"If you are satisfied from all of the evidence in this case that the large stone or slate which fell upon the plaintiff was loosened, and that the place where he was at work at the time it fell upon him was rendered unsafe and the rock or slate was loosened by reason of plaintiff's work in opening a room in the mine operated by the defendant, and he continued to work under said rock or slate after it had become dangerous by reason of his work in opening his room, the defendant would not be liable in this case, and your verdict should be for the defendant."

This instruction, if it had been given, would have required the jury to find for the defendant if they believed from the evidence that the plaintiff in mining or excavating in his room loosened the rock in the entry which afterward fell upon him while he was at work in the mine. A statute of this state provides:

"In order to better secure the proper ventilation of every coal-mine and promote the health and safety of the persons employed therein, the owner, agent or operator shall employ a competent and practical inside overseer, to be called "mining-boss," who shall keep a careful watch over the ventilating apparatus, the airways, traveling-ways, pumps and pump timbers and drainage, and shall see that as the miners advance their excavations all loose coal, slate and rock overhead are carefully secured against falling in upon the traveling-ways." (Gen. Stat. 1901, § 4129.)

If in making the excavation through the horseback the rock over the entry which fell upon the plaintiff was loosened by his work, it was the duty of the overseer, as the plaintiff advanced his excavations, to see that the loosened rock was carefully secured from falling in upon the traveling-ways; and this duty was not avoided by the fact, if it was a fact, that the rock thus loosened extended into the mouth of the room as well

as ·over a part of the entry. The miner had the right to assume, unless he had notice to the contrary, that the overseer had performed his duty in this respect. (4 Thomp. Com. Law of Neg. § 4194.)

Testimony was given to the effect that the loose rock could be seen by one passing along the entry; that one edge of it extended from a place over the north track back into the neck of the plaintiff's room, over the horseback; that rock had fallen there in the entry, and had been cleaned up by the defendant's employees, leaving, as the evidence tends to show, this loose rock overhead. This testimony, if believed, was evidence that the overseer had failed in his duty, and tended to show negligence of the defendant; but if the instruction requested had been given a verdict could not have been returned for the plaintiff if the original loosening of the rock in the entry had been caused by excavations made by the plaintiff, without regard to his own care or knowledge of the danger. Such an instruction would have been erroneous. If in the proper discharge of his duties rock became loosened in the entry, the plaintiff, although bound to exercise due care for his own safety, still had the right to assume that, in the absence of notice to the contrary, the owner and the overseer had performed their duty. Whether he had such notice was a disputed matter of fact properly submitted to the jury.

Whether the entrance through the horseback from which the defendant claims the rock in part fell was a completed part of the mine, to which the rule requiring the owner to provide a reasonably safe place to work attached, or whether it was a part of the working place which the miner was creating, we are not required to consider, because the instruction refused applied to rock falling in the entry as well as in the room. Being erroneous so far as applicable to the entry, it was properly refused. If a finding of fact had been made that the loose rock was in the roof of

the neck of the room where the horseback had been taken out, and not in the entry, such consideration might have been necessary.

An interesting discussion of the relative rights and duties of mine-owner and miner in respect to the completed portions of a mine, the working places therein, and the point of time when a place excavated by the miner becomes a completed part of the mine will be found in a note to *Wellston Coal Company v. Smith*, 65 Ohio St. 70, in 87 Am. St. Rep. 547, 557. For the statement of principles to some extent involved in the conclusion reached, see *Taylor v. Star Coal Co.*, 110 Iowa, 40, 81 N. W. 249; *Cushman v. Carbondale Fuel Co.*, 116 Iowa, 618, 88 N. W. 817; *Consolidated Coal Co. v. Lundak*, 196 Ill. 594, 63 N. E. 1079; 4 Thomp. Com. Law of Neg. §§ 4192-4194.

The judgment is affirmed.