BALDI v. CEDAR HILL COAL & COKE CO.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1909.)

No. 2,934.

1. MASTER AND SERVANT (§ 118*)—OPERATION OF MINES—STATUTORY PROVISIONS—"TRAVELING WAY."

The place in which plaintiff and another were working in a coal mine when plaintiff was injured by falling rock, while designed for a passageway when completed, but which was then completed only a part of the way, held not to have been a "traveling way," within the meaning of the Colorado statute requiring mining companies to timber traveling ways, but in the nature of a room, for which the company was required to furnish the timbers, to be placed by the workmen.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 118.*]

2. APPEAL AND ERROR (§ 1048*)—REVIEW—DISCRETION OF COURT—PERMITTING LEADING QUESTIONS TO WITNESS.

Permitting leading and suggestive questions to a witness, over objection, may constitute reversible error, where the answers elicited are the only basis in the evidence for an instruction given on a material issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4141; Dec. Dig. § 1048.*]

3. MASTER AND SERVANT (§ 235*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—PLACES TO WORK—CARE REQUIRED OF SERVANT.

When it is the duty of a master to exercise ordinary care to furnish a reasonably safe place for an employé to work, the employé has the right to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assume that such duty has been performed, and is not required to exercise care to discover unknown dangers, which are not plainly observable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Action by Dominick Baldi against the Cedar Hill Coal & Coke Company. Judgment for defendant, and plaintiff brings error. Reversed.

L. J. Stark and George S. Redd (George Stidger, on the brief), for plaintiff in error.

Julian G. Dickinson, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. In this case the plaintiff and one Artizoni were engaged in removing coal, dirt, and rock through a place which, when completed, was to be used as a passageway or entry. They were to receive 50 cents per ton for the coal removed, 50 · cents per car for the rock, and $1.50 per lineal yard for the work done. The entryway or room had been constructed to such an extent that the face of the room was in the neighborhood of 38 feet from the entrance. On or about July 17, 1907, while the plaintiff and Arti-· zoni were working this place, a piece of rock fell from the roof, striking plaintiff on the foot, injuring it to such an extent that his foot was amputated a short distance above the ankle. This action was brought by plaintiff, and the negligence alleged upon the part of defendant was that it negligently and willfully failed to furnish timbers for the purpose of propping the roof of the mine, and negligently and willfully failed to place timbers in the working place of said mine; the theory of the plaintiff being that this was an entryway, which it was the duty of the defendant, under the statute of Colorado, to timber and keep a careful watch over, to see that all loose coal, slate, and rock overhead was carefully secured against falling. The provision of the statute of Colorado claimed to be applicable is found in Sess. Laws 1885, p. 138, and is as follows:

"Sec. 4. The owner or agent of every coal mine shall employ a practical and competent inside overseer, to be called a 'mining boss,' who shall keep a careful watch over the ventilating apparatus, and the airways, traveling ways, pumps, timbers, and drainage; also, shall see that, as the miners advance their excavations, all loose coal, slate and rock overhead are carefully secured against falling in or upon the traveling ways, and that sufficient timber, of suitable length and sizes, is furnished for the places where they are to be used, and placed in the working places of the mines."

Under the facts in this case, we do not think the place where they were working was a traveling way at the time of the injury. The fact that it was contemplated to be a traveling way, and the excavation was being made for that purpose, did not constitute a traveling way until its completion. It was the same as what has been designated as a "room," in which coal is mined, and under the statute it was the duty of the defendant to furnish to plaintiff and his companion, Arti-

zoni, the timbers necessary for protecting the roof of the excavation from falling as the work progressed. But it was not the duty of the defendant to place the timbers. This was the duty of the plaintiff and Artizoni. But it was the duty of the defendant to furnish the necessary timbers in the room. Whether or not the necessary timbers were furnished, or timbers furnished as requested and called for by Artizoni and plaintiff, the evidence is conflicting and unsatisfactory. The evidence in this respect, however, was sufficient to go to the jury.

Error is assigned based upon the overruling of objections to questions asked a witness for defendant, which questions and answers thereto, were as follows:

"Q. These men were to look after their own working place, were they, to see if it were safe? A. Yes. Q. These men were under contract to drive this entry, so that it would be a permanent place for pulling through or hauling coal on cars? A. Correct."

These questions were each objected to as being leading and suggestive. The objections were well taken. The witness had been interrogated as to the duties of plaintiff and Artizoni, the arrangement under which they were doing their work, and, while the witness had previously answered without objection that the work for which they were employed was customary work mining coal, taking the responsibility of all other things, digging coal and taking care of the place, these questions objected to were suggestive of the fact, that had not been answered, that they were to see that the working place was safe, and that they were under contract to complete this entryway as a permanent place for pulling through and hauling cars of coal. The vital importance of the evidence elicited by these questions is fully understood, when we consider the following portion of the instructions of the court to the jury, which was duly excepted to:

"It will be necessary, in the consideration of the evidence, for you to first determine whether or not the plaintiff and Artizoni were to drive this entry and turn it over to the company as a completed entry. If you find that to be the fact, then the plaintiff cannot recover under any condition or any circumstances that you might arrive at, because in that event it was incumbent upon plaintiff and his associate to keep the way in a safe condition until completed, and under such conditions the company would have nothing to do with it until completed."

There was no other evidence, excepting the answers to these questions, objected to as leading and suggestive, from which the jury would be authorized to find that the plaintiff and Artizoni were working under a contract by which this entry was to be completed and turned over to the defendant as a completed entry. They were working, so far as the other evidence indicates, as the ordinary miner usually works, and under no special contract. The defendant, it is true, contemplated that, after their work had reached a given point, and connected with another entryway, this place in which they were working should be used thereafter as an entrance. Leading and suggestive questions and answers thereto are not always prejudicial; but, in view of the instruction thus given, and the fact that the answers to the questions objected to were the only evidence upon which the instruction could be fairly based, it is apparent that it was prejudicial error, for which a new trial must be granted.

A further portion of the charge excepted to was in the following language:

"Now, even though you might find that the defendant is guilty of negligence as charged, yet if you further find and believe from the evidence that the plaintiff knew of this dangerous place in the roof, or by exercise of reasonable care on his part for his safety he could have found out and avoided it, then he cannot recover, because in that event he would be guilty of contributory negligence, would have assumed the risk, and his recovery is barred."

This portion of the charge was only applicable upon the theory that it was defendant's duty to provide a safe place for plaintiff to perform his work, and its statement of the law relative to assumed risk was erroneous in this: That it placed upon the plaintiff the exercise of care to find out whether or not the condition of the roof was dangerous. When it is the duty of the master to exercise ordinary care to furnish a reasonably safe place for the employé, such employé only assumes the risk of those dangers which are known to him or which are plainly observable. He has a right to assume that the master has performed his duty, and it is not incumbent upon the employé to exercise care to discover unknown dangers which are not plainly observable. Choctaw, Okla. & Gulf R. R. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96.

The judgment is reversed, and a new trial granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes