No. 20,689.

REMIGI RICARDO, *Appellee*, v. THE CENTRAL COAL & COKE
COMPANY et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. COAL MINING—*"Miner's Working Place"—"Traveling Way"—Construction of Statute.* The whole of the room in which a coal miner works while mining coal and while pushing cars used by him in his work is the miner's working place; and no part of it is a traveling way within the meaning of section 6276 of the General Statutes of 1915.

2. SAME—*Making "Miner's Working Place" Safe—Custom.* Evidence is admissible to show that it is the custom for mine operators to put a room in a safe condition when starting a coal miner to work in the room after it has been partially worked out by another miner.

3. COAL MINING—*"Miner's Working Place"—Placing Props—Evidence—Instructions.* A coal miner who is directed to work in a room that has been partially worked out by another miner may be employed to prop the room and make it safe before he commences to mine the coal therefrom; and where there is evidence tending to show such employment, an instruction should be given submitting the question of such employment to the jury.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed March 10, 1917. Reversed.

*J. J. Campbell, P. E. Nulton,* and *C. O. Pingry,* all of Pittsburg, for the appellants.

*F. B. Wheeler,* of Pittsburg, *C. A. McNeill,* of Columbus, and *Maurice McNeill,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendants appeal from a judgment rendered against it for damages for personal injuries to the plaintiff.

The evidence tended to show the following facts: That the defendant operated a coal mine in which the plaintiff was employed as a miner, and in which he was injured; that the mine was located in Cherokee county, and was operated under the shaft, entry, room and pillar plan or system; that the plaintiff was put to work in a room that had been partially worked

out by another miner; that at the time the plaintiff went to work the room had been driven from forty to seventy-five feet from the entry, at a width of about twenty feet, and at a height of about three feet; that the room was not brushed; that it had no break-throughs or cross-cuts; that there was no way to get into the room except through the neck from the entry; that there was a track for cars about four feet from the left side of the room, running from the entry to the face of the coal; that about three days before the plaintiff went to work the roof of the room had been propped by the miner who worked in it before the plaintiff did; that on the day the plaintiff went to work he examined the room, concluded that the roof was bad, and complained to the mine boss about its condition; that the mine boss promised to send in props, and a timber man to fix the roof; that before the plaintiff went to work he found some props and set them so that he could work in the face of the coal; that he drove the room eight or nine feet; that the plaintiff was injured by a rock which fell from the roof eight feet from the face of the coal, in that part of the room from which the coal had been taken before the plaintiff began work.

The plaintiff's petition set out two causes of action—one for failure to comply with the statute requiring the defendant to see that, as the miners advanced their excavations, all loose coal, slate and rock overhead are carefully secured against falling in upon the traveling ways; and the other for failure to provide for the plaintiff a reasonably safe place in which to work.

1. Was the place where the plaintiff was injured a traveling way within the meaning of section 6276 of the General Statutes of 1915? This question was presented to the trial court by a demurrer to the plaintiff's evidence and by requested instructions. The defendant requested the following instructions:

"The jury is instructed that a traveling way in a coal mine worked on the room and pillar basis, is that part of the mine in which the defendant company has driven underground excavations or subterranean passageways where the coal has been removed and a sufficient amount of the brushing consisting of slate, rock and other materials forming the roof over the coal have been removed, and upon which traveling way, subterranean passage or underground road coal is hauled by mules or by

motor power and over and upon which the men and employees of the defendant company travel to and from their work.

"You are further instructed that a room turned off a traveling way, entry or subterranean passage where the coal has been removed by the men or miners working in the mine, is not a traveling way but is the working place of the miner or miners employed by the defendant company to work therein."

On this question the court gave the following instructions:

"The chief inquiries for you to make in this case are:

"Was the plaintiff injured in his working place or in the traveling-way leading to and from his working place?

"By the allegations in the petition in this case and the nature of the negligence set out some of the sections of our statutes are involved and in-so-far as they are applicable to this case, read as follows:

" 'In order to better secure the proper ventilation of every coal mine and promote the health and safety of the persons employed therein, the owner, agent, or operator shall employ a competent and practical inside overseer, to be called "mining boss," who shall keep a careful watch over the ventilating apparatus, the air-ways, traveling ways, pumps and pump timbers and drainage, and shall see that as the miners advance their excavations all loose coal, slate and rock overhead are carefully secured against falling in upon the traveling-ways.' [Gen. Stat. 1915, § 6276.]

"And still another section reads as follows:

" 'For any injury to person or property occasioned by any violation of this act, or any willful failure to comply with its provisions by any owner, lessee or operator of any coal mine or opening, a right of action against the party at default shall accrue to the party injured for the direct damage sustained thereby.' [Gen. Stat. 1915, § 6280.]

"Webster defines travel to mean 'to journey over; to traverse; the act of traveling from place to place.'

"The same authority defines way to mean 'that by, upon, or along which one passes or progresses, opportunity or room to pass; place of passing; passage; road; street; track or path of any kind.'

"So I instruct you that under the words traveling ways under the statutes in this state and in these instructions means, a place habitually and necessarily used by a miner or by the miners in a coal mine, to travel upon or through in going to and from his or their working place or places."

Several cases, more or less directly involving this statute, have been decided by this court. In *Barrett v. Dessy*, 78 Kan. 642, 97 Pac. 786, a miner was injured at the junction of his room with the entry, while shoveling coal into a car standing on the track opposite his room. There this court said:

"If in making the excavation through the horseback the rock over the entry which fell upon the plaintiff was loosened by his work, it was the

duty of the overseer, as the plaintiff advanced his excavations, to see that the loosened rock was carefully secured from falling in upon the traveling-ways; and this duty was not avoided by the fact, if it was a fact, that the rock thus loosened extended into the mouth of the room as well as over a part of the entry. The miner had the right to assume, unless he had notice to the contrary, that the overseer had performed his duty in this respect." (p. 647.)

The court there quoted that part of the statute referring to traveling ways, but did not state that any part of the miner's room was a traveling way.

Another case is *Little v. Norton,* 83 Kan. 232, 109 Pac. 768, in which a miner was injured by a rock falling on him while he was in the entry. That part of the statute referring to traveling ways was quoted, but no definition or description of a traveling way was given.

In *Tanner v. Mining Co.,* 97 Kan. 21, 154 Pac. 269, this court said:

"The action was one for damages for personal injuries sustained through the neglect of the defendant to inspect and make secure the traveling ways of its coal mine. A demurrer was sustained to the plaintiff's evidence and he appeals.

"The proof was that the plaintiff, who was an air man, was injured in a hauling crosscut which had been closed some months before the accident. The crosscut was no longer used and could not be used as a traveling way. The only occasion any one had to use it after the manner of a traveling way was to step into it twice a month to inspect the stopping, and the place was perfectly safe for that purpose. As will shortly appear, when the plaintiff was injured the place was no more a traveling way or in use as a traveling way than a miner's room would have been. Consequently the negligence charged was not established." (p. 21.)

Colorado has a statute almost identical with the statute of this state. In *Baldi v. Cedar Hill Coal & Coke Co.,* 173 Fed. 781, the United States circuit court of appeals, eighth circuit, construed the expression "traveling ways" as used in the Colorado statute. In that case the plaintiff and another person were engaged in removing dirt, coal and rock through a place which, when completed, was to be used as a passageway or entry. The court there said:

"Under the facts in this case, we do not think the place where they were working was a traveling way at the time of the injury. The fact that it was contemplated to be a traveling way, and the excavation was being made for that purpose, did not constitute a traveling way until its completion. It was the same as what has been designated as a 'room,'

in which coal is mined, and under the statute it was the duty of the defendant to furnish to plaintiff and his companion, Artizoni, the timbers necessary for protecting the roof of the excavation from falling as the work progressed. But it was not the duty of the defendant to place the timbers. This was the duty of the plaintiff and Artizoni. But it was the duty of the defendant to furnish the necessary timbers in the room." (p. 782.)

The expressions of the supreme court of this state and the decision of the United States circuit court of appeals in the Baldi case justify the conclusion, in the present action, that the place where the plaintiff was injured was not a traveling way within the meaning of the statute.

The statute also provides that—

"And every mine shall be supplied with sufficient prop timber of suitable length and size for the places where it is to be used, and kept in easy access to." (Gen. Stat. 1915, § 6276.)

These props are furnished by the mine operator and are set by the miners to support the roofs of their rooms. It would hardly be necessary to furnish props to the miners for use in their rooms if the mine operator were required to see that the loose coal, slate and rock overhead were secured against falling in the rooms.

Section 6299 of the General Statutes of 1915 reads:

"Standing or stagnant water shall not be allowed to remain in air-courses, entries, traveling ways, or rooms."

Taking judicial notice of those matters of which the trial court apparently took judicial notice, that is, of the manner, largely regulated by statute, in which a coal mine in southeastern Kansas is operated under the shaft, entry, room and pillar plan, or system, and applying those matters in the construction of the statutes quoted in the instructions of the trial court and in this opinion, we reach the following conclusions: That air courses are passages for conducting air; that entries are those places in coal mines used by the miners and other workmen generally in going to and from their work, and through which coal is hauled from the necks of the rooms to the foot of the shaft; that a room is the place in which a miner works and from which he mines coal; and that traveling ways are places for the passage of workmen to and from different parts of the mine.

Evidence was introduced tending to show that it was the custom in this and in other mines for the mine operator to put a room in safe condition when starting a miner to work in it after it had been partially worked out by another miner. If any part of a miner's room were a traveling way, under the statute, proof of such a custom would be unnecessary and wholly immaterial. The existence of the custom argues that the whole of the room is the miner's working place, and that no part of it is a traveling way.

The plaintiff's evidence tended to show that he received the cars on a switch at the entry to his room, pushed the cars in, loaded them, and pushed them out again to the switch. This showed that the plaintiff used the whole length of his room as his working place.

The terms "room," "entry," "traveling way," and a number of others are used in the statutes, and must have definite and fixed meanings applicable in all situations where the shaft, entry, room and pillar system of mining is carried on. It follows that when a place in a mine is definitely described, and its relation to the other parts of the mine is fixed and certain, as being a place in a room, an entry, an air passage, or a traveling way, it is a question of law for the court to determine whether such place is or is not in a traveling way.

Applying the facts shown by the evidence, those of which judicial notice is taken, and the declarations of this and other courts, and taking into consideration all the provisions of the statutes bearing on this question, we are compelled to say that the place in which the plaintiff was injured was his working place and not a traveling way, within the meaning of the statute.

A contrary conclusion has been reached in Indiana, under a similar statute, in *Antioch Coal Co. v. Rockey*, 169 Ind. 247, and in *Domestic Block Coal Co. v. DeArmey*, 179 Ind. 592; but the reasoning by which the supreme court of Indiana reached its conclusion is not convincing.

The trial court should have sustained the demurrer to the plaintiff's evidence under the first cause of action, or, failing so to do, should have instructed the jury that the place in which the plaintiff was injured was his working place, and was not a traveling way.

2. Defendant complains of the admission of evidence to prove a custom of putting a 'room in a safe condition when starting a miner to work in it, but cites no authorities except 12 Cyc. 1907, by which is probably meant 12 Cyc. 1097. That citation does not support the defendant's contention. In *Taylor v. Star Coal Co.*, 110 Iowa, 40, the supreme court of Iowa said:

"Evidence of a custom in a mining district that an operating company should look after the safety of roofs of entries to the mines, and of the company's responsibility for the condition of such roofs when notified of their defects, and that an 'entry' meant a passageway high enough for mules to pull small cars through, is admissible in an action for personal injury resulting from falling of a roof, where the plaintiff was engaged in an entry." (Syl. ¶ 1.)

(See, also, *Graham v. Trimmer*, 6 Kan. 230; *Smythe v. Parsons*, 37 Kan. 79, 14 Pac. 444; *Strong v. Ringle*, 96 Kan. 573, 152 Pac. 631; *Commission Co. v. Mowery*, 99 Kan. 389, 162 Pac. 313; *Bergquist v. Chandler Iron Co.*, 49 Minn. 511, 515; *Lee v. Mo. Pac. Rly. Co.*, 195 Mo. 400, 401; and *Railway Co. v. McClellan*, 80 Miss. 700.)

Evidence of such a custom was competent and there was no error in its admission.

3. The court refused to give the following instruction, requested by the defendant:

"The jury is instructed that if you find from a preponderance of the evidence that at the time or very soon after the time when the plaintiff was assigned to room number 9, or the place in which he alleges he was injured, he at that time agreed with the Company's room boss, Albert Touson, that he, the plaintiff, would set prop. timbers under the roof in said room and in that portion of said room which had been worked by some person other than himself, the defendant to pay him for such services, and you further find from a preponderance of the evidence that the defendant through its room boss, Albert Touson, furnished to the plaintiff at his working place prop timbers sufficient in number and of the proper size and length to properly secure the roof in said room from falling in and upon him, and the plaintiff refused or neglected to use such prop timbers for the purpose of making his place safe, then your verdict shall be for the defendants.

"If you find by a preponderance of the evidence in this case that the plaintiff was sent to make his working place safe or agreed to make his working place safe, then you are instructed that the plaintiff assumed the risk of his employment and your verdict should be for the defendants."

There was evidence which tended to show that the mine boss had furnished the plaintiff with props, had instructed him to set them in his room to make it safe, and had promised to pay him for doing this work. The weight of this evidence was necessarily for the jury. The question should have been submitted to the jury.

Because of the error in not instructing the jury that the place where the plaintiff was injured was in his working place and not in a traveling way, and in not giving an instruction concerning the employment of the plaintiff to prop his room, the judgment is reversed and a new trial is directed.